**Jeremy A. SIGMOND, D.C., Plaintiff,**

**v.**

**Phillip E. BROWN, et al., Defendants.**

**No. CV 83–7861.**

United States District Court,
C.D. California.

Oct. 15, 1986.

Raymond P. Boucher, Sayre, Moreno, Purcell & Boucher, Los Angeles, Cal., for plaintiff.

Rick A. Cigel, Wyman, Bautzer, Christensen, Kuchel & Silbert, Los Angeles, Cal., for defendants and counterclaimants Joseph A. Berg, D.C., Benjamin D. Shearer, D.C., Paul J. Malapira, D.C., Dennis Swanson, D.C., Marcus I. Brown, D.C., and California Chiropractic Ass'n.

A. Tod Hindin, Los Angeles, Cal., for defendant Philip E. Brown.

## MEMORANDUM DECISION

REA, District Judge.

Plaintiff Jerry A. Sigmond brought this action against the California Chiropractors' Association (CCA); various members of a CCA Peer Review Committee—Joseph A. Berg, D.C., Benjamin B. Shearer, D.C., Paul J. Malapira, D.C., Dennis Swanson, D.C., and Marcus I. Brown (CCA Defendants); and Phillip E. Brown for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. § 1962(b), (c) and (d).

Defendants' CCA and the CCA Defendants move for summary judgment under Fed.R.Civ.P. Rule 56.[1] For the reasons stated below defendants' motion is granted.

## I. INTRODUCTION

Section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a "pattern of racketeering activity." Section 1962(c) prohibits "any person employed by or associated with any enterprise" from conducting the affairs of an enterprise through a pattern of racketeering activity. Additionally, Section 1962(d) makes it unlawful for a person to conspire to violate either § 1962(b) or (c).

Title 18 U.S.C. § 1961(1) defines "racketeering activity" as any act indictable under several provisions of Title 18 of the United States Code or various crimes under State law. The acts enumerated under § 1961(1) are called "predicate acts" and include the following conduct alleged by plaintiff: mail fraud, 18 U.S.C. § 1341; and extortion, Cal.Penal Code § 518.

The CCA is a non-profit mutual corporation which is the largest state-wide organization representing the chiropractic profession. It is composed of various committees and subcommittees. The Health Service Foundation (HSF) is part of the CCA and the Peer Review Committees (PRC's) were subcommittees of the HSF. The HSF's primary goal is to promote the use and acceptance of chiropractics in the community. The PRC's existed from approximately 1970 to 1983 and their primary function was to review and recommend the customary fees, number of treatments required, and the pattern of chiropractic treatments generally followed.

The peer review process was available to interested parties who wanted reviews of various chiropractic practices. These reviews were generally requested by patients, chiropractors, insurance companies (mainly to determine customary fees), health care providers, and attorneys. The PRC's were comprised of nine regional committees, each reviewing chiropractic matters within its geographic area.

The Los Angeles committee (LA–PRC) had approximately six members. The LA–PRC rendered opinions regarding only those issues raised by an individual or entity submitting a chiropractor's claim to be peer reviewed. The PRC's final recommendations were meant solely as opinions and had no binding effect except as to the CCA members.[2] To cover expenses, each person or entity requesting a review was charged a fee by the CCA. The fee in 1982 was $35.00 per review. None of the PRC mem-

---

1. Defendant Phillip E. Brown did not join in the motion for summary judgment.

2. The CCA's Application for Membership included the following clause:

"I agree to comply with the By-Laws, Code of Ethics, and the Advertising Rule of the Association and of the Society. I agree to abide by the recommendations of the Peer Review Committee of the CCA/HSF if any of my claims are submitted for review."

bers were compensated for conducting their reviews.

The essence of Plaintiff's claims is that the CCA and the LA–PRC engaged in price-fixing, kickback schemes, and conspiracy to reduce payments to chiropractors.

## II. ANALYSIS

### A. Predicate Acts

Section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a "pattern of racketeering activity." Section 1962(c) prohibits conducting the affairs of an enterprise through such a pattern. In order to establish that the CCA Defendants violated subparagraphs (b) or (c), plaintiff must show that CCA Defendants participated in an enterprise through a "pattern of racketeering activity." *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir.1982) *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). Pursuant to § 1962, a pattern of racketeering activity requires at least two acts of racketeering. Plaintiff claims that the racketeering offenses committed by defendants in this action were extortion and mail fraud. The court finds that plaintiff cannot establish either factually or as a matter of law that extortion or mail fraud was committed.

### 1. Extortion

■ Cal.Penal Code § 518 defines extortion as "the obtaining of property from another, with his consent ... induced by a wrongful use of force or fear...." Plaintiff cannot establish that any of defendants' conduct constitutes extortion unless he proves the following elements of the offense: 1) a wrongful use of fear, 2) with specific intent of inducing the victim to consent to defendants' obtaining his property 3) which does in fact induce such consent and results in defendants' obtaining his property from the victim. *People v. Hesslink*, 167 Cal.App.3d 781, 788–89, 213 Cal.Rptr. 465 (1985).

The following are the supposed acts of extortion alleged by plaintiff:

1) One of the CCA Defendants, Shearer, filed a complaint against plaintiff with the Board of Chiropractors in response to plaintiff's suggestion that the LA–PRC's name be changed to "whores for rent." Plaintiff claims that by filing the complaint, Shearer intended to influence the Board so that it would revoke plaintiff's license. The Board eventually dismissed the complaint against plaintiff. Therefore, no property was obtained from plaintiff due to Shearer's actions.

2) In May 1985, CCA Defendant Malapira and the Attorney General's Office filed a declaration against Sigmond attesting that plaintiff threatened to kill Malapira. Plaintiff claims this declaration was false. Nevertheless, plaintiff has not produced evidence as to how this declaration constituted an act of extortion.

Additionally, plaintiff cannot show that CCA Defendants intended to take his license, because a license is not property over which the CCA has control. Moreover, when plaintiff was asked whether he ever consented to the suspension or withdrawal of his license he replied that he fought the Board "all the way down the line." [3] Finally, Malpira's acts in May of 1985 are irrelevant to the culpability of the CCA Defendants. Malapira resigned from the LA–PRC in 1982, and the LA–PRC ceased to exist in 1983.

3) Plaintiff claims that defendants P. Brown and Shearer committed extortion by forming a "referral relationship" where each referred cases from one to the other and was paid $200.00 per case. Assuming this to be true, it did not result in the obtaining of property from plaintiff.

4) Plaintiff alleges that defendants P. Brown and Shearer committed extortion through an adverse determination by the LA–PRC against plaintiff in its review of plaintiff's treatment of patient Gregory Hyde. It is difficult to find that this review constituted extortion when Hyde ulti-

---

**3.** Sigmond Deposition, p. 344:7–24

mately paid his bill in full. Even if the peer review intended plaintiff to receive less money, there could be no taking of property by the CCA Defendants. Benefits from reductions of chiropractor's fees would operate to the advantage of insurance companies and not to the advantage of the CCA Defendants. Additionally, there is no evidence that the conduct of the peer review committee encompassed threats or use of fear.

5) In March 1980, plaintiff claims that defendant P. Brown (who is both an attorney and a chiropractor) promised plaintiff more favorable reviews by the PRC if plaintiff would refer cases to P. Brown's legal practice. Assuming this allegation is true, it cannot be construed as an attempt to obtain plaintiff's property through the use of threats or fear. There is no indication that plaintiff ever consented to this arrangement.

6) The final alleged act of extortion was the "zeroing out" of plaintiff's charges for his treatment of patient Christopher Delisle. Again, plaintiff has provided no evidence that any of the defendants used threats or fear to obtain plaintiff's property.

Plaintiff has failed to establish that the CCA Defendants used fear against him with the specific intent to obtain his consent to the taking of his property. Perhaps more importantly, there has been no evidence that the CCA Defendants ever actually obtained any property from plaintiff. Plaintiff therefore has failed to establish the elements of extortion under Cal.Penal Code § 518.

**2. Mail Fraud**

■ The essential elements of mail fraud under 18 U.S.C. § 1341 are 1) the formation of a scheme or artifice to defraud, and 2) the use of the mails in furtherance of the scheme. *United States v. Bohonus*, 628 F.2d 1167 (9th Cir.1980). There can be no fraudulent scheme unless

specific intent is proven. *Id.* at 1172. The court in *Bohonus* recognized that "[n]either the breach of fiduciary duty, nor the receipt of secret profits ... would suffice, standing alone, to show a § 1341 violation; there must be a recognizable scheme formed with intent to defraud." *Id.* (citations omitted).

[4] Plaintiff alleges that the LA–PRC conducted unfair reviews and that the PRC members derived unfair benefits through referrals from insurance companies. However, plaintiff's allegations are conclusory and not supported by adequate evidence. Additionally, plaintiff fails to provide any evidence supporting a conclusion that the LA–PRC somehow intentionally formed a scheme to defraud anyone. Absent some showing of intent, plaintiff cannot show a § 1341 violation.

**B. Enterprise**

■ In *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) the Supreme Court required an enterprise to have an existence independent of the predicate offenses. 452 U.S. at 583, 101 S.Ct. at 2528. The Court determined that "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved...." *Id.* In the present case, the only "enterprise" alleged is the LA–PRC and plaintiff has stated that the sole purpose of the LA–PRC was to conduct alleged illicit activities.[4] Additionally, plaintiff's own deposition testimony indicates that he has no evidence to show that there was any separate existence of the LA–PRC from the pattern of racketeering activity.[5]

Plaintiff also fails to offer adequate evidence of a RICO enterprise because the only enterprise alleged in this case is the LA–PRC, a named defendant. The Ninth

---

**4.** Sigmond Deposition, p. 192:13–193:17

**5.** At his deposition, plaintiff stated that he knew nothing about the peer review process. Sigmond Deposition, 93:2–94:9.

Circuit has determined that an enterprise cannot be the RICO defendant. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984). In *Rae*, the court found that the plaintiff could not state a cause of action against defendant Union Bank because the bank apparently was the enterprise with whom the plaintiffs interacted. *Rae*, 725 F.2d at 481.

The *Rae* court cited to *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982) where the Fourth Circuit Court dismissed RICO claims against defendant Computer Sciences Corp. (CSC) even though the RICO enterprise identified was a division of CSC. The court in *Computer Sciences* noted that the division had no corporate existence separate and apart from the CSC itself, and concluded that the CSC was properly dismissed. *Computer Sciences*, 689 F.2d at 1190. Similarly, in the instant case the court finds that the LA–PRC had no separate existence apart from the CCA.

Plaintiff would like this court to adopt the Ninth Circuit's decision in *United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986). In *Benny*, the court found that a sole proprietorship conducting unquestionable fraudulent activity could be found to be an enterprise. The *Benny* court found that by having several employees working for him, the defendant was not the equivalent of a "one-man show," and an enterprise was therefore created. *Benny*, 786 F.2d at 1415–16. The *Benny* decision involved a sole proprietorship and is distinguishable from the present case. This court finds the analysis in *Rae* and *Computer Sciences supra* more analogous to the facts of this case. *See also, Haroco v. American Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir.1984).

C. Conspiracy

Section 1962(d) makes it unlawful for a person to conspire to violate any of the provisions of (§ 1962's) subsections (a) (b) or (c). In the present case, plaintiff is only alleging violations of subsections (b) and (c). Because this court finds that Plaintiff failed to establish either the existence of an enterprise or the elements of the two predicate acts required for a pattern of racketeering activity, there is no need to consider whether there was a conspiracy to violate § 1962.

III. CONCLUSION

Plaintiff has failed to satisfy this court that there is evidence sufficient to establish the elements of mail fraud under 18 U.S.C. § 1341 or extortion under Cal.Penal Code § 518. Plaintiff has also failed to establish by sufficient evidence the existence of a RICO enterprise. Finally, there are no genuine issues of fact which would support plaintiff's claims.

The court recognizes the Supreme Court's reasoning in *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) that the RICO Act should be liberally construed to effectuate its remedial purpose. *Id.* at 3287. Nevertheless, it is not appropriate to permit plaintiff to proceed with his case against the CCA and the CCA Defendants in view of the lack of evidence to support a cause of action under the RICO statute. Defendants' Motion for Summary Judgment is hereby GRANTED.

Based upon the Memorandum Decision, judgment is ordered to be entered in favor of defendants California Chiropractors' Association, Joseph A. Berg, Benjamin B. Shearer, Paul J. Malapira, Dennis Swanson, Marcus I. Brown and against plaintiff Jerry A. Sigmond.

The court finds that there is no just reason for delay of entry of judgment as to the identified parties involved in the motion for summary judgment.