CONTEMPORARY SERVICES CORPORATION, Damon Zumwalt, and Peter Kranske, Plaintiffs,

v.

UNIVERSAL CITY STUDIOS, INC., Ned West, Inc., Event Management Services, Robert Geddes, Eugene Felling, Steven Redfearn, Cory Meredith, William Parsons, and Does I through 70, Defendants.

No. CV 86–7120 WJR.

United States District Court, C.D. California.

March 2, 1987.

J. Michael Hennigan, Jeanne E. Irving, Hennigan & Mercer, Los Angeles, Cal., for defendant Robert E. Geddes.

Maren Christensen, Maggie Heim, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendants Universal City Studios, Inc., dba Universal Amphitheatre, and Eugene Felling.

David J. Gudino, Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., for defendants and cross-defendants Steven Redfearn and Ned-West, Inc., dba Pacific Amphitheatre.

James M. Gansinger, Gansinger & Hinshaw, Los Angeles, Cal., for defendants Event Management Services, Cory Meredith and William Parsons.

Gordon E. Bosserman, Malissa Hathaway McKeith, Kenneth L. Wilton, MacDonald, Halsted & Laybourne, Los Angeles, Cal., for plaintiffs.

## MEMORANDUM DECISION AND ORDER OF PARTIAL REMAND

REA, District Judge.

The issue presented in this case is whether to remand some or all of plaintiffs' eleven claims to the state court from which defendants removed them. The plaintiff brought ten of these claims under state law and one under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, 1964. The Court finds that it must retain jurisdiction over the RICO claim, it must remand some of the state law claims because they are asserted against "pendent parties," and it may in its discretion remand the remaining pendent state claims. In the interests of justice and to promote judicial economy, the Court exercises this discretion to remand these claims.

## I. SUBSTANTIVE BACKGROUND

The plaintiffs Contemporary Services Corporation, Damon Zumwalt and Peter Kranske provide security services at major Southern California sports and concert arenas. Plaintiffs provided service for defendants Universal Studios, Inc., d/b/a Universal Amphitheatre ("Universal Amphitheatre") and Ned West, Inc., d/b/a Pacific Amphitheatre ("Pacific Amphitheatre") until these defendants allegedly breached their contracts in 1984. Plaintiffs allege that defendant Event Management Services (EMS) induced Universal and Pacific Amphitheatres to breach their contracts with plaintiffs and hire EMS to provide security instead. Plaintiffs are suing the managers of Pacific and Universal Amphitheatres, Steven Redfearn and Eugene

Felling for allegedly convincing their respective corporations to replace plaintiffs with EMS. Plaintiffs claim that EMS and its owners, defendants William Parsons and Cory Meredith, offered bribes and kickbacks to Universal and Pacific Amphitheatres and their managers and threatened to prevent certain musical acts from performing at the Amphitheatres if EMS was not hired. EMS and its owners allegedly used their contacts with defendant Robert Geddes, the owner of Avalon Attractions (a large concert promotion firm), to make credible their threats to conduce musical acts to boycott the Amphitheatres.

Plaintiffs further allege that the various defendants have used EMS to implement a lucrative ticket scalping operation that requires the participation of the security service ordinarily responsible for policing against such illegal activities. Plaintiffs contend that they were displaced at Pacific and Universal Amphitheatres and at other sports and concert arenas by EMS because they would not participate in the unlawful scalping scheme.

## II. PROCEDURAL HISTORY

Plaintiffs filed this action in California Superior Court for Los Angeles County in January, 1984. On October 14, 1986, the state court allowed the plaintiffs to amend their complaint to add additional parties and causes of action, including a federal RICO claim. In the First Amended Complaint, plaintiffs have the following claims: breach of contract against Universal and Pacific Amphitheatres; inducing breach of contract, interference with prospective economic advantage, and violations of California Business and Professions Code sections 17200–17208 (unfair competition) and sections 16700–16761 (unlawful restraint of

trade and unlawful attempt to monopolize) against Robert Geddes, Eugene Felling, Steve Redfearn, Cory Meredith, William Parsons, and Event Management Services (EMS); libel and trade libel against Mr. Felling and Mr. Redfearn; and RICO claims against defendants Geddes, Felling, Redfearn, Parsons, and Meredith. Thus, plaintiffs plead a federal RICO claim against five defendants but have no federal claim against the remaining three defendants.

On October 30, 1986, defendant Geddes removed the entire action to this Court, claiming federal jurisdiction due to plaintiffs' RICO claim. On December 8, 1986, the plaintiffs moved to remand the entire action. The Court heard argument on the remand motion on January 5, 1987. At this hearing, the Court requested further briefs on whether partial remand would be appropriate and took the matter under submission. The Court has now received and reviewed these supplemental briefs.

## III. THE STATUTORY BASIS FOR REMOVAL

Initially, determining whether to remand some or all of plaintiffs' claims requires analysis of whether they were properly removed under 28 U.S.C. sections 1441(a), (b) or (c). Section 1441(a) provides that any civil action may be removed to federal district court if a district court would have had original jurisdiction over the action.[1] Section 1441(b) modifies 1441(a) by limiting when diversity of citizenship cases are removable.[2] Section 1441(c) authorizes removal of an entire case when "a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise

---

**1.** 28 U.S.C. section 1441(a) provides:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where the action is pending.

**2.** 28 U.S.C. section 1441(b) provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

non-removable claims or causes of action." [3]

Section 1441(c) was enacted as part of the 1948 revision of the Judicial Code. Professors C. Wright, A. Miller and E. Cooper note that, "The stated purpose of the change in language effected by the 1948 revision was the simplification of removal and the advancement of the administration of justice. Unfortunately, it is difficult to conclude that these purposes have been achieved." 14A Federal Practice and Procedure § 3724, at 359–60 (1985). Indeed, in the case now before the Court, section 1441(c) creates ambiguity about whether removal of an action with federal and factually related state claims is proper. On the one hand, sections 1441(a) and (b) imply that a case containing federal and factually related state claims may be removed in its entirety because a district court could have heard the entire action had it been originally filed in the district court. (The factually related state claims would be within the district court's pendent jurisdiction, a point discussed in more detail below). On the other hand, section 1441(c) can be interpreted as allowing removal of an action with mixed federal and state claims only when the federal claim is "separate and independent" from the state claims. In other words, section 1441(c) arguably precludes removal of actions with federal and factually related state claims.

A. *Interpretations of Section 1441(c) Blocking Removal of Pendent State Claims*

Two recent district court decisions within the Ninth Circuit have held that section 1441(c) blocks removal of otherwise removable claims when they are not "separate and independent" from nonremovable claims in the complaint. *Kinsey v. Nestor Exploration Ltd.—1981A*, 604 F.Supp. 1365 (E.D.Wash.1985); *Skaw v. Lady Pacific, Inc.*, 577 F.Supp. 2 (D.Alaska 1983).

In *Kinsey*, plaintiffs filed RICO and state law tort claims in state court, and the defendants removed to federal court. The district court held that removal was improper because the state court lacked jurisdiction to hear a federal RICO claim and an action may not be removed from a court lacking jurisdiction. In the alternative, the court held that section 1441(c) barred removal of any part of the case because the RICO claim was not "separate and independent" from the state claims as defined by *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). *Kinsey*, 604 F.Supp. at 1370–71. In *Finn*, the Supreme Court defined a section 1441(c) "separate and independent claim" as one arising from different facts than the remaining claims in an action:

> [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

341 U.S. 6, 14, 71 S.Ct. 534, 540.

The *Kinsey* approach of interpreting *Finn* to allow removal only when federal and state claims do not arise from an interlocked series of transactions precludes removal of an action containing pendent state claims. This is apparent by comparing *Finn*'s definition of a "separate and independent claim" with the Supreme Court's definition of a pendent state claim in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court defined pendent claims as those that "arise out of a common nucleus of operative facts" with related federal claims. *Id.* Thus, the Supreme Court has placed section 1441(c) separate and independent claims and pendent state claims into mutually exclusive categories.

In *Skaw*, the second case alluded to earlier that relies on section 1441(c) to deny removal, the district court was faced with

---

**3.** 28 U.S.C. section 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

two federal claims, the first under the Jones Act, 46 U.S.C. § 688, and the second for maintenance and cure for injuries received during employment as a seaman.[4] The plaintiff's Jones Act claim could not be removed because of the "savings to suitors" clause of 28 U.S.C. section 1333(1). The district court held that section 1441(c) blocked the defendant from removing either claim because the first claim was not "separate and independent" from the second within the *Finn* rule.

The *Kinsey* and *Skaw* interpretation of section 1441(c) received approval in a recent comment. Smith, *Removal and Remand: Unraveling the Mysteries*, 8 CEB Civ. Litigation Rep. 277 (1986). The commentator argues that the legislative history of section 1441(c) reveals a Congressional intent to narrow existing removal jurisdiction from what existed prior to 1948. For support, he cites the Historical & Revision Notes accompanying 28 U.S.C.A. section 1441:

> [1441](c) permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of United States District Courts. *In this respect it will somewhat decrease the volume of Federal litigation.*

Smith, *Removal and Remand* at 280 (emphasis added). Mr. Smith contends that prior to 1948, cases presenting mixed federal and state law questions could not be removed. Thus, he argues, to interpret 1441(c) to allow removal even when a case presents pendent state claims would frustrate the revisors' intent (adopted by Congress) to reduced removals to federal courts. *Id.* at 280.

Smith further argues that restricting removal as in *Kinsey* promotes such policy considerations as easing expanding federal case loads and maintaining due balance between the authority of federal and state courts.

## B. *Removal of Pendent State Claims is Proper Under Section 1441(a) and (b)*

The views of the courts in *Kinsey* and *Skaw* and of the above commentator have some merit. The Court, upon reflection, however, declines to adopt them. First, the *Kinsey* approach contradicts holdings by the United States Courts of Appeals for the Seventh and the Tenth Circuits that removal of a case with a federal claim and pendent state claims is made pursuant to 28 U.S.C. sections 1441(a) and (b), not section 1441(c). *Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir.1984); *Sheet Metal Workers Int'l Ass'n, AFL–CIO v. Seay*, 696 F.2d 780, 782 (10th Cir.1983); *cf. Adolph Coors Co. v. Sickler*, 608 F.Supp. 1417, 1426–27 (C.D.Cal.1985) (federal claim is properly removed under section 1441(a) even though it is presented in the same complaint with "pendent party" claims). Treatise writers have reached the same conclusion. 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3724, at 400; 1A Moore, Moore's Federal Practice ¶ 0.163, at 338 (2d ed. 1984).

The Seventh and Tenth Circuit approach is well-reasoned. Under sections 1441(a) and (b), as noted, an action is removable if it is within the original jurisdiction of the district courts. A federal claim under RICO would, if sued upon alone, clearly be removable as within a district court's original jurisdiction as provided by 28 U.S.C. section 1331. Under the *Kinsey* approach, however, plaintiffs may, by simply adding a state cause of action to their complaints, defeat defendants' rights to have federal claims against them tried to federal courts. *See Adolph Coors*, 608 F.Supp. at 1426. This seems contrary to the intent behind section 1441(a) and (b).

Moreover, the best conclusion is that section 1441(a) and (b) specifically provide for removal of pendent state claims in allowing removal of actions within a district court's "original jurisdiction." While neither Article III nor the Judicial Code explicitly pro-

---

**4.** The second claim was within the district court's admiralty jurisdiction. *See* 28 U.S.C.
§ 1333.

vide for pendent jurisdiction, case precedent dating to 1824 establishes such jurisdiction. *E.g., Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978); *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138; *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824).[5] Under these cases, an action removed with a federal claim and pendent state claims could have been brought originally in a district court. As long as an action could have been brought originally in district court, the removal requirements of section 1441(a) and (b) should be deemed met.

In addition, the Court disagrees that the Historical & Revision Notes accompanying section 1441(c) demonstrate an intent to block removal of a case containing federal and pendent state claims. While the revisors intended section 1441(c) to reduce removals to federal court, section 1441(c) can and has had this effect without blocking removal of cases with federal and pendent state claims.

Section 2 of the Judiciary Act of 1875 (as amended), the precursor of section 1441(c), provided that

when in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court....

28 U.S.C. § 71 (1940 ed.). Section 2 thus allowed removal of an action containing otherwise nonremovable claims when the action had diversity claims that could have been filed as a separate lawsuit—in other words, when a court could have "fully determined" the controversy between the diverse parties without necessarily affecting the rights of the nondiverse parties in the suit.

Today's section 1441(c), however, does not expressly limit removal of actions with otherwise nonremovable claims to actions containing controversies between diverse parties. By omitting this express limitation, the drafters of section 1441(c) arguably intended to expand removal to include actions with "separate and independent" federal claims. *See New England Concrete Pipe v. D/C Systems of New England,* 658 F.2d 867, 870 (1st Cir.1981).[6] The drafters could have provided for this change and simultaneously decreased the volume of Federal litigation by significantly reducing diversity removal from that allowed by section 2.

The cases interpreting section 2's ambiguous language allowed removal of "separable controversies," those disputes that could have been brought alone as separate suits based upon diversity jurisdiction. Those cases then further held that section 2 allowed removal of the entire case, not just the "separable controversy."[7] Section

---

**5.** In *United Mine Workers v. Gibbs,* the Supreme Court explained that the constitutional foundation of pendent claim jurisdiction lies in the Article III power of federal courts to adjudicate a "case" which presents a federal question, the factually related state claims being a part of that single "case." 383 U.S. at 725, 86 S.Ct. at 1138.

**6.** Courts and commentators have noted, however, that interpreting section 1441(c) to allow removal of an entire case when the case consists of otherwise nonremovable claims and a federal claim that is "separate and independent" from those claims creates constitutional problems. *See Thomas,* 740 F.2d at 478; *Adolph Coors,* 608 F.Supp. at 1428; Lewin, *The Federal Courts' Hospitable Back Door—Removal of "Separate and Independent" Non-Federal Causes of Action,* 66 Harv.L.Rev. 423 (1953). In *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. at 371, 98 S.Ct. at 2401, the Supreme Court stated that a

finding that federal and nonfederal claims arise from a "common nucleus of operative facts" is the constitutional minimum for the exercise of jurisdiction by a federal court over a non-federal claim (absent diversity). Under *Finn,* though, separate and independent claims are those which do not arise from a common nucleus of operative facts.

The result of *Owen* and *Finn* may be to leave section 1441(c) with very limited applicability. *See* C. Wright, A. Miller & E. Cooper, 14A Federal Practice & Procedure § 3724, at 367–68.

**7.** The courts denied removal when they held that the disputes within a case were "nonseparable controversies." When a dispute was held to be a "separate controversy," it could be removed though the rest of the case could not. This three-category doctrine proved unworkable in practice. As the First Circuit Court of Appeals

1441(c), as interpreted by *American Fire & Casualty Co. v. Finn*, significantly alters this approach. Relying on 1441(c), *Finn* expressly rejects that an entire case can be removed on the simple demonstration that a "separable controversy" within the case could have been filed as a separate action. Thus, after *Finn*, section 1441(c) allows removal of substantially fewer diversity cases than section 2 allowed.[8]

A third reason for declining to follow the *Kinsey* approach is that allowing removal of cases with federal and pendent state claims does not substantially interfere with comity between federal and state courts. Indeed, due respect for the proper role of federal courts will favor removal of federal claims in many cases, if not pendent state claims. The Supreme Court has implied that in exercising pendent jurisdiction district courts should consider that state courts generally have greater expertise in state law issues while federal courts have greater expertise in federal law issues. *Compare Gibbs*, 383 U.S. at 726 & n. 15, 86 S.Ct. at 1139 & n. 15 (approving Judge Magruder's counsel that "[f]ederal courts should not be overeager to hold onto the determination of issues that might be more appropriately left to settlement in state court litigation") *with Hagans v. Lavine* 415 U.S. 528, 548–50 & n. 14, 94 S.Ct. 1372, 1385–86, & n. 14, 39 L.Ed.2d 577 (1974) ("the federal court's rendition of federal

law will be at least as sure-footed and lasting as any judgment from the state courts"). Accordingly, when state claims present legal issues that have not been treated by state courts or that involve complex analysis of state law, remand of these issues might be appropriate to "promote justice between the parties by procuring for them a surer-footed reading of applicable law." *Id.* This does not imply, however, that a federal court should remand the federal claim. Instead, a district court, recognizing its own comparative expertise, should at least accept removal of the federal claim while remanding the state claims.

This is consistent with the Supreme Court's holding in *Thermtron Products, Inc. v. Hermansdorfer* that district courts lack discretion to remand cases within their jurisdiction. 423 U.S. 336, 344–45 & n. 9, 96 S.Ct. 584, 589–90, & n. 9, 46 L.Ed.2d 542 (1976). In *Thermtron*, a district court remanded a diversity of citizenship case clearly within its jurisdiction because a crowded docket and the mandatory priority assigned to a flood of Black Lung cases filed in its district prevented a timely hearing of the action. The district court found that under the circumstances "plaintiffs' right of redress is being severely impaired" by the removal. 423 U.S. at 340–41, 96 S.Ct. at 587–88. The Supreme Court reversed, holding that a case removed pursu-

---

has noted, "the courts were unable to divine from the distinction between separate and separable controversies a practicable standard that could produce consistent results." *New England Concrete Pipe*, 658 F.2d at 870.

**8.** In *Finn*, the district court held that plaintiff's claims against two foreign insurance companies and a resident agent for the same fire loss were "separate and independent claims" and thus, the court could hear the whole case on a diversity of citizenship theory. The district court conceptualized the claim against the resident agent as a separate claim joined to the claim between the diverse plaintiff and defendant insurance companies. The Supreme Court reversed, holding that the plaintiff had the same claim against two diverse parties and one non-diverse party—thus destroying federal subject matter jurisdiction. 341 U.S. 6, 71 S.Ct. 534. The Court reasoned that the allegations against the agent "involve substantially the same facts and transactions as do the allegations in the first portion of the

complaint against the foreign insurance companies." 341 U.S. at 16, 71 S.Ct. at 541. It concluded that the claims against the agent could not be "separate and independent" under such circumstances.

After *Finn*, few, if any, cases will be removed on findings that they present diversity claims that are separate and independent from nonremovable claims. If the diversity claim is so separate and independent that it does not involve the same facts and transactions as the nonremovable claims, it cannot usually be joined in the same action with those nonremovable claims. If the diversity claim is not so separate and independent, however, the case is not removable under *Finn*. Exceptions to this result may exist, but they will rarely occur and probably rarer still be recognized by the courts and parties. *See* C. Wright, A. Miller & E. Cooper, 14A Federal Practice & Procedure § 3724, at 367–68; *Motor Vehicle Casualty Co. v. Russian River County Sanitation Dist.*, 538 F.Supp. 488, 494 (N.D.Cal.1981).

ant to 28 U.S.C. section 1441(a) or (b) "may be remanded only in accordance with [28 U.S.C.] § 1447." 423 U.S. at 342, 96 S.Ct. at 588. The Court noted that a crowded docket was not a permissible basis for remand under 28 U.S.C. section 1447. Under section 1447, a district court can only remand upon a finding that it lacks jurisdiction or that a defendant failed to observe such procedural requirements as removing within thirty days of discovering the right to remove. *Id.* at 343–45, 96 S.Ct. at 589–90.

Allowing removal of a federal claim is also consistent with the Supreme Court's recognition of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In *Colorado River*, the Supreme Court analyzed when federal courts should apply the "abstention doctrine" and postpone the decision of certain cases or issues in deference to state court treatment of them. The Court noted that generally:

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where an order to the parties to repair to the State court would clearly serve an important countervailing interest.

424 U.S. at 813, 96 S.Ct. at 1244 (citation omitted).

■ In sum, the Court finds the approach of the Seventh and Tenth Circuits persuasive and holds that actions with federal and pendent state claims are removed under 28 U.S.C. section 1441(a) and (b) rather than section 1441(c). This holding is not inconsistent with the intent behind the 1948 revision of the Judicial Code as the overall volume of cases removable under 28 U.S.C. section 1441 will probably still be less than under the pre–1948 Judicial Code.

Furthermore, this holding is consistent with federal-state judicial comity, properly analyzed. Finally, this holding follows from attention to the Supreme Court's decisions in *Thermatron Products* and *Colorado River.*

### C. *Plaintiffs' Action Was Removed under § 1441(a) and (b)*

■ Applying the above principles, plaintiffs' action was removed under 28 U.S.C. section 1441(a) and (b) rather than section 1441(c). Plaintiffs' action consists of a federal RICO claim against some of the defendants and various state law claims against all defendants. The federal and state law claims "arise out of a common nucleus of operative fact," an alleged ticket-scalping conspiracy. Although plaintiffs complained of defendants Universal and Pacific Amphitheatres' breach of contract and defendants EMS, Steven Redfearn and Eugene Felling's interference with that contract in separate counts, the complained of wrongs were simply one means to implement the conspiracy. Thus, removal of the action by the defendants named in both the RICO claim and the state law claims was proper as the action against these defendants could have been brought in district court originally.

### IV. AS THE STATE COURT HAD JURISDICTION, THIS COURT HAS DERIVATIVE JURISDICTION

Another potential objection to the removal of this action is an argument that the California state court from which the action was removed lacked jurisdiction. *See Kinsey,* 604 F.Supp. at 1369. Federal removal jurisdiction is derivative; "If the state court lacks jurisdiction of the subject matter . . ., the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1430–31 (9th Cir.1984) (citation omitted).

The California superior court in which this action was filed might have lacked jurisdiction over the federal RICO claim if

Congress explicitly or implicitly provided for exclusive federal jurisdiction over civil RICO actions. The district court in *Kinsey* held that Congress intended such exclusive jurisdiction. 604 F.Supp. at 1371. The California Supreme Court, however, held that federal-state jurisdiction over civil RICO actions is concurrent in *Cianci v. Superior Court*, 40 Cal.3d 903, 916, 221 Cal.Rptr. 575, 710 P.2d 375, 221 Cal.Rptr. 574 (1985). Neither the *Kinsey* nor the *Cianci* decision binds this Court. The Court finds *Cianci* more persuasive.

No federal appellate court has yet decided whether jurisdiction over RICO is exclusively federal. *See County of Cook v. Midcon*, 773 F.2d 892, 905 n. 4 (7th Cir. 1985). Yet, in the one court of appeals' decision that comments on this issue in dictum, the court indicated that states probably should have concurrent jurisdiction over civil RICO actions. Moreover, other district courts have held that states have concurrent jurisdiction over RICO. *E.g., Carman v. First Nat'l Bank of Louisville*, 642 F.Supp. 862, 864 (W.D.Ky. 1986); *HMK Corp. v. Walsey*, 637 F.Supp. 710, 717 (E.D.Va.1986).

The Seventh Circuit's views in *Midcon* and the holdings in the above district court cases are well-reasoned. The United States Supreme Court directs this Court "[i]n considering the propriety of state-court jurisdiction over any federal claim, [to begin] with the presumption that state courts enjoy concurrent jurisdiction." *Gulf Off-Shore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981). This presumption is rebutted "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* The relevant federal statute, 18 U.S.C. section 1964(c) is silent on this jurisdictional issue and thus does not

rebut the presumption.[9] No relevant legislative history rebuts this presumption. *See Cianci*, 40 Cal.3d at 911–12, 221 Cal.Rptr. 575, 710 P.2d 375; *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482, 488 (2d Cir. 1984) ("[RICO's] legislative history ... gives little hint of the intended scope of private action under civil RICO."), *rev'd on other grounds*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); Blakely, *The RICO Civil Action in Context: Reflections on Bennet v. Berg*, 58 Notre Dame L.Rev. 237, 249–80 (1982) (annotating RICO's legislative history). Finally, state court jurisdiction would advance rather than impede the federal interest vindicated by RICO. Allowing plaintiffs an initial choice of forum promotes Congress's intent "that RICO is to 'be liberally construed to effectuate its remedial purposes.' Pub L 91–452, § 904(a), 84 Stat 947." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346, 360 (1985).

■ The Court accordingly agrees with *Cianci* that federal and state courts share concurrent jurisdiction over RICO claims. Accordingly, this action was both properly before and properly removed from the California superior court.

## V. THE STATE LAW CLAIMS AGAINST THE "PENDENT PARTIES" MUST BE REMANDED

Universal and Pacific Amphitheatres and EMS have not been named in plaintiffs' RICO claim and are sued solely on state law theories. The only basis for this Court's jurisdiction over them is as "pendent parties."

The Supreme Court has indicated that there may be certain cases, for example when federal jurisdiction is exclusive, where pendent party jurisdiction may be appropriate. *Aldinger v. Howard*, 427

---

**9.** 18 U.S.C. section 1964(c) provides:
Any person injured in his business or property by reason of violation of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

This section thus allows district courts to exercise jurisdiction over civil RICO actions. It does not, though, indicate whether such jurisdiction is exclusive.

U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). In *Aldinger,* however, the Court noted that "the question of pendent party jurisdiction is 'subtle and complex,' and we believe that it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction." *Id.* at 17–18, 96 S.Ct. at 2421–22.

The Ninth Circuit Court of Appeals has treated the *Aldinger* observation that pendent party jurisdiction might be proper as dictum and repeatedly refused to recognize such jurisdiction. *See Carpenters So. Calif. Admin. Corp. v. D & L Camp Constr. Co. Inc.,* 738 F.2d 999, 1000 (9th Cir.1984); *Safeco Ins. Co. v. Guyton,* 692 F.2d 551, 555–56 (9th Cir.1982); *Ayala v. United States,* 550 F.2d 1196, 1197 (9th Cir.1977), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).[10]

■ Under the Ninth Circuit rule on pendent parties, the Court must remand all the claims against Universal and Pacific Amphitheatres and EMS because the claims against them are based solely on state law and the plaintiffs and defendants lack diversity of citizenship.

## VI. THE REMAINING PENDENT STATE LAW CLAIMS MAY AND SHOULD BE REMANDED

Defendants Geddes, Felling, Redfearn, Parsons, and Meredith are named defendants in plaintiffs' RICO claim and in various state claims. Because these claims arise out of a common nucleus of operative facts, the state claims are within the Court's pendent jurisdiction.

Pendent jurisdiction, unlike federal question or diversity jurisdiction, is discretionary. In the seminal case expanding pendent jurisdiction to its current parameter,

*United Mine Workers v. Gibbs,* the Supreme Court counseled:

Th[e] power [to hear pendent state claims] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims....

383 U.S. at 726, 86 S.Ct. at 1139; *see also In re Nucorp Energy Securities Litigation,* 772 F.2d 1486, 1491 (9th Cir.1985); *Beverly Hills Bank & Trust Co. v. Compania de Navegacione Almirante S.A., Panama,* 437 F.2d 301, 305–06 (9th Cir. 1971).

The Supreme Court reaffirmed these principles in *Hagans v. Lavine,* 415 U.S. 528, 545–48, 94 S.Ct. 1372, 1383–85, 39 L.Ed.2d 577 ("given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudications of [pendent state] claims"). In *Hagans,* the Court also noted that district courts should consider "comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment" before exercising pendent jurisdiction. *Id.* at 548, 94 S.Ct. at 1385.

### A. *The Pendent Claims Should Be Resolved in State Court*

■ Under *Gibbs* and *Hagans,* in deciding whether to exercise its pendent jurisdiction, the Court must inquire, first, whether this will be fair to the litigants, second, whether this will serve judicial economy,

---

**10.** In *Aldinger,* the Supreme Court affirmed the Ninth Circuit's denial of pendent party jurisdiction. The Court limited its affirmance to the facts, however, noting that "[o]ther statutory grants and other alignments of parties [than in *Aldinger* ] *might* call for a different result." 427 U.S. at 18, 96 S.Ct. at 2422 (emphasis added).

In *Ayala,* the Ninth Circuit reasoned that the Supreme Court in *Aldinger* only considered whether pendent party jurisdiction was contrary

to Congressional grants of jurisdiction and specifically reserved comment on the constitutionality of such jurisdiction. The Ninth Circuit in *Ayala* then proceeded to adhere to its precedent that such jurisdiction is unconstitutional, indicating it would do so until the Supreme Court proclaims the contrary. 550 F.2d at 1200. This Court is bound by this Ninth Circuit precedent and must also assume that pendent party jurisdiction is unconstitutional.

and third, whether this will be consistent with federal-state court comity.

■ To begin, exercising pendent jurisdiction would be unfair to the plaintiffs in this case given that the state claims against defendants Pacific and Universal Amphitheatres and EMS must be remanded to state court. Thus, exercising pendent jurisdiction would force plaintiffs to brief and argue essentially the same issues of state law in two forums. This division would also subject plaintiffs and defendants to the risk of inconsistent results.

Next, judicial economy would be served by having one court adjudicate all the issues of state law raised by plaintiffs. As this Court lacks jurisdiction over the state law claims against the pendent parties, only the state court can hear all state law claims. Moreover, if this Court retains jurisdiction over the RICO claim and remands the remaining state law claims, very little, if any, duplication of proceedings between this Court and the state superior court will result. Due to the overcrowded dockets in Los Angeles County Superior Court, this Court will almost certainly have settled, dismissed or tried the RICO claim before the remanded state claims come to trial in the superior court. If this Court dismisses the RICO claim, then only the state court will have to try the fact issues involved in this case.[11] If this Court tries the RICO claim, then the Court's findings of fact will have collateral estoppel value which will minimize the issues of fact remaining for the state trial.

Finally, respect for federal-state comity favors state court resolution of at least some of the pendent state claims. Plaintiff's Eighth Cause of Action claims that

California Business and Profession Code sections 17200–17208 regulating "unfair competition," defined as "unlawful, unfair, or fraudulent business practice," allow private plaintiffs to seek restitution and injunctive relief on behalf of the general public. While citizens can sue on behalf of the general public for injunctive relief, *see Perdue v. Crocker National Bank*, 38 Cal.3d 913, 929, 216 Cal.Rptr. 345, 702 P.2d 503 (1985); *Hernandez v. Atlantic Finance Co. of Los Angeles*, 105 Cal.App.3d 65, 164 Cal.Rptr. 279 (1980), the Court is unaware of California authority authorizing them to seek restitution for the general public. A California court would be the best qualified to decide this on first impression. In addition, the test under California law for what constitutes "unfair competition" involves complex analysis of what business practices are "unlawful" under California law. This is not a well-settled proposition. *See Perdue*, 38 Cal.3d at 930, 216 Cal.Rptr. 345, 702 P.2d 503. Similar problems would exist with this Court's adjudication of plaintiffs' claims for infringement of California Business and Professions Code sections 16700–16761.

**B.** *The Pendent Claims Should Be Remanded Rather Than Dismissed*

Having determined that plaintiffs' pendent state claims should be resolved in state court, the remaining issue is whether this Court should dismiss or remand them.

As noted, *Thermtron Products, Inc. v. Hermansdorfer* holds that a district court may not remand a case except on a finding that a case was removed "improvidently and without jurisdiction" within the meaning of 28 U.S.C. section 1447(c). 423 U.S. at 344–45 & n. 9, 96 S.Ct. at 589–90, & n. 9.

---

11. The Court is not now faced with a motion to dismiss plaintiffs' RICO claim and thus does not decide whether plaintiffs' have adequately pled a RICO violation. It should be noted, however, that to successfully plead a RICO violation plaintiffs must allege that a defendant has (1) engaged in racketeering activity, (2) that the defendant has committed a pattern of such activity, (3) that the defendant has committed the acts through an "enterprise." To establish the "enterprise" element, plaintiffs must demonstrate evidence that the various conspirators functions as a continuing unit and that the en-

terprise has an existence separate and apart from the pattern of activity in which it engaged. *Sigmond v. Brown*, 645 F.Supp. 243, 245–47 (C.D.Cal.1986); *Allington v. Carpenter*, 619 F.Supp. 474, 476–79 (C.D.Cal.1985). Recent district court decisions within the Ninth Circuit indicate that the requirements for pleading an enterprise are strict. *Sigmond*, 645 F.Supp. at 246–57; *Allington*, 619 F.Supp. at 478–79; *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.*, 627 F.Supp. 1290 (C.D.Cal.1986). Plaintiffs' complaint might prove insufficient in this regard.

The United States Courts of Appeals for the Third and the Seventh Circuits have interpreted *Thermtron*'s rule literally and held that a district court has no discretion in remanding actions. *Levy v. Weissman,* 671 F.2d 766 (3d Cir.1982); *Cook v. Weber,* 698 F.2d 907 (7th Cir.1983); *Ryan v. State Board of Elections,* 661 F.2d 1130, 1134 (7th Cir.1981). Relying on its literal interpretation of *Thermtron,* the Seventh Circuit has held that a district court cannot remand pendent state claims because it cannot find that it lacks jurisdiction over such claims—only that it chooses not to exercise the discretionary jurisdiction it possesses. *Cook v. Weber,* 698 F.2d 907. Accordingly, the Seventh Circuit insists that if a district court is to decline to hear pendent state claims it must dismiss rather than remand them. *Id.* at 909.

The Ninth Circuit has rejected this approach and held that because a district court has discretion to dismiss pendent state claims, it also has discretion, at least in some circumstances, to remand these claims. *Swett v. Schenk,* 792 F.2d 1447 (9th Cir.1986). *Swett v. Schenk* is consistent with decisions from the Second, Fourth, Fifth, Sixth, and Eighth Circuits allowing discretionary remand when pendent or ancillary jurisdiction is invoked or when grounds for abstention exist. *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557 (2d Cir.1978); *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983); *IMFC Professional v. Latin Am. Home Health,* 676 F.2d 152, 159-60 (5th Cir.1982); *In re Romulus Community Schools,* 729 F.2d 431, 439 (6th Cir.1984); *Hofbauer v. Northwestern Nat'l Bank of Rochester,* 700 F.2d 1197 (8th Cir.1983). These former circuits find that the Supreme Court in *Thermtron* did not eliminate all discretion from remand decisions. The Sixth Circuit Court of Appeals' discussion in *In re Romulus* aptly analyzes the problems created if a federal court may only dismiss and not remand pendent state claims. In some cases, the considerations of comity and efficiency discussed in *United Mine Workers v. Gibbs* will favor state rather than federal trial of pendent state claims. If a district court can only dismiss such claims, however, statutes of limita-

tions may prevent a plaintiff from refiling the claims in state court. Rather than to allow defendant's removal petition to place these claims out of court, the district court will then be "compelled to decide unsettled questions of state law in a case that otherwise could properly be dismissed, simply because the time bar may prevent refiling in state court." *In re Romulus,* 729 F.2d at 439.

In *Swett v. Schenk,* the district court had dismissed the federal claim—and was faced only with remanding the remaining state claims. Accordingly, the Ninth Circuit's holding in *Swett* addresses only that circumstance; in *Swett* the Court indicated that "it is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed." 792 F.2d at 1450. Neither the Ninth Circuit Court of Appeals nor any other court of appeals has ruled on the discretion of a district court to remand state claims while retaining a related federal claim. *See, e.g., In re Romulus,* 729 F.2d 431; *IMFC Professional,* 676 F.2d 152; *Hofbauer,* 700 F.2d 1197 (reasoning that district courts have discretion to remand after federal claim or federal defendant were dismissed from action).

In *IMFC Professional,* the Fifth Circuit implied that a district court can remand pendent state claims while retaining a related federal claim. The court broadly stated that "if a case is removed as one within pendent jurisdiction, the discretionary element that inheres in that doctrine allows remand of nonfederal issues." 676 F.2d at 160. Strictly, this broad formulation was dictum as the court was only faced with a district court remand following the dismissal of the United States as a party defendant (the presence of the United States provided the sole basis for federal jurisdiction). Even if this language in *IMFC Professional* was dictum, however, it reflects the most reasonable rule. A contrary rule that district courts must dismiss, rather than remand pendent state claims, might create statute of limitations problems for plaintiffs, as noted. This

would be true regardless of whether a district court dismissed state claims after dismissing a related federal claim or while retaining a related federal claim. Thus, the same reasons favoring remand over dismissal exist regardless of whether a federal court has dismissed or retained the federal claim to which state claims are pendent.

■ Accordingly, the Court remands rather than dismisses plaintiffs' pendent state claims, leaving only the RICO claim before this Court.

## VII. THE RICO CLAIM WILL NOT BE STAYED

Plaintiffs have requested the Court to stay adjudiciation of their RICO claim pending resolution of their state claims in state court. Plaintiffs assert that the abstention and "wise judicial administration" principles of *Colorado River Water Conservation District v. United States* favor this approach. As noted in the Court's earlier discussion of *Colorado River*, the Supreme Court strongly disfavors federal court postponement of jurisdiction on abstention or "wise judicial administration" grounds and limits the application of these doctrines to "exceptional circumstances." 424 U.S. at 813, 817, 96 S.Ct. at 1246; *see also Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1982) (in deciding "whether to dismiss [or stay] a federal action because of a parallel state-court litigation" federal courts must balance the interests involved "with the balance heavily weighted in favor of the exercise of jurisdiction."); *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 541–42 (9th Cir.1985).

■ No "exceptional circumstances" warrant postponement of federal jurisdiction in this case. As this Court will be able to adjudicate the RICO claim more expeditiously than the superior court will reach the remanded state claims, this Court should proceed without delay.

### ORDER

On the matter of Plaintiffs' Motion for Remand now before this Court, the Court having considered the papers filed in support thereof and in opposition thereto and having heard oral argument,

IT IS HEREBY ORDERED that the Motion is GRANTED in part and DENIED in part. The Court retains jurisdiction over Plaintiffs' Eleventh Cause of Action in Plaintiffs' First Amended Complaint. The Court remands Plaintiffs' First through Tenth Causes of Action to the Superior Court of the State of California for the County of Los Angeles.