## In re DISCIPLINARY ACTION
### Raymond P. BOUCHER, Esq., Respondent.

### Jeremey A. SIGMOND, a/k/a Jerome A. Sigmond, Plaintiff–Appellant,

v.

### Philip E. BROWN; Joseph A. Berg, Benjamin B. Shearer; Paul J. Malapira; Dennis Swanson, Marcus I. Brown; California Chiropractic Association Health Service Foundation Peer Review Committee, Defendants–Appellees.

### No. 86–6591.

United States Court of Appeals, Ninth Circuit.

Jan. 21, 1988.

Raymond P. Boucher, Los Angeles, Cal., for plaintiff-appellant.

Rick A. Cigel, Los Angeles, Cal., for defendants-appellees.

Before HALL, NOONAN and THOMPSON, Circuit Judges.

## ORDER

Raymond P. Boucher is a partner in the firm of Sayre, Moreno, Purcell & Boucher, 10351 Santa Monica Blvd., Suite 406, Los Angeles, California 90025. On October 14, 1987 this court issued an order to Boucher that he show cause why sanctions should not be imposed on him for misrepresentations made by him as counsel for Jeremy A. Sigmond in the case of *Sigmond v. Brown, et al.*, decided by an opinion disposition of this court on September 18, 1987 [828 F.2d 8]. Boucher chose not to respond to the order to show cause. We now impose a sanction.

### FACTS

Sigmond, a chiropracter, brought suit against the California Chiropractic Association (CCA) and various chiropracters associated with it, contending that the defendants had engaged in various practices amounting to mail fraud and extortion in violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1964. The district court held that Sigmond had failed to present sufficient evidence to withstand the defendants' motion for summary judgment. *Sigmond v. Brown*, 645 F.Supp. 243 (C.D.Cal.1986). Sigmond appealed to this court.

In his opening brief on behalf of Sigmond, filed April 7, 1987, Boucher made the following misrepresentations of the record in the case:

1. At page 9 the brief makes assertions about the expedited case of the peer review of Doctor Richard Smith. The assertions are said to be supported by citation to C.R. 112, Exhibit 44, deposition of Shearer. This exhibit does not support the assertions.

2. At pages 9 and 10 the brief makes assertions about the review of the case of Parlan Edwards, referring to what "the PRC" did in that case. The natural understanding of the abbreviation "PRC" in this brief involving the Los Angeles Peer Review Committee is that the PRC is this committee. In fact the PRC which conducted Edwards' case is the San Diego Peer Review Committee, which was not a party to the case. By his unqualified references to "the PRC" Boucher conveyed the

impression that the Los Angeles Peer Review Committee was involved.

3. At page 7 it is stated that the PRC members engaged in price fixing and that their "mode of operation was to reduce the fees that the doctor had charged." This allegation is said to be supported by a string of references including references to C.R. 114, Exhibits 70, 73, 74, 78, 79, 80, and 81. None of these documents pertain to the LA–PRC; they are other chiropractic communities. Only two of the thirteen exhibits cited indirectly support the asserted proposition. Exhibits 14 and 15 are PRC forms stating the committee conclusion that treatment was unnecessary or too expensive. The other eleven exhibits neither evidence a reduction of fees nor suggest that reductions coerced doctors.

4. At page 8 the brief declares, "SIGMOND claims nothing could be less fair than to have the person rendering the peer review also testify against the doctor that was reviewed. (CR 112, Exhibits '20' and '45')." Exhibit 20 is a form by which a peer review committee requests information from a chiropractor prior to a performance review. Exhibit 45 is an excerpt from an anonymous deponent who does not discuss anything relating to testimony against the reviewed doctor by a reviewing committee member. Neither exhibit supports the statement made.

5. At page 7 the brief states that "several of the members of the PRC also served as independent medical examiners, worked as consultants, and testified as experts against the doctors." This statement is supported by nine references. Three of these references, Exhibits 38, 39, 40 (Swanson Deposition), provide evidence that PRC members consulted for insurance companies. None of them provide evidence that members of the PRC testified as experts against the doctors. None of the six other cited documents support the statement in any way.

6. At page 7–8 the brief declares, "SIGMOND claims there is an obvious conflict of interest that exists when PRC members review an individual claim, and then testify as an expert on behalf of the insurance company reviewing the identical claim particularly when CCA members are bound by the PRC decision. (CR 112, Exhibits '16', '50', '51')." Exhibits 16 and 50 are forms with which the board requests information. Exhibit 51 is an advertisement for membership in the California Chiropractic Association. None of the exhibits support the statement made.

7. At page 10 the brief declares, "Each CCA Defendant consulted for or testified on behalf of insurance companies at the same time they were members of the PRC." A reference follows to 28 exhibits. Of these exhibits only 11 appear to support the proposition that some (*not each*) of the CCA defendants consulted for the insurance companies. These are Exhibits 30, 34, 38, 39, 40, 67, 75, 78, 79, 80, and 81. The other 17 exhibits do not support the statement made. For example, Exhibit 64, which is cited here, is a letter discussing appropriate fees for treatment and the need for cooperation between insurers and the chiropractic profession; nothing in the document relates to consultation for or testimony on behalf of insurance companies.

8. At page 6 the brief declares, "SIGMOND's subsequent Peer Reviews were adverse; and he was now considered a threat by PHILIP BROWN and the other committee members who were involved in the schemes." Five exhibits are cited in support of this statement. Two of them are forms requesting information for a peer review; three are forms in which the peer review states that certain charges were inappropriate or excessive. Nothing in these documents supports or even suggests that Sigmond was considered a threat by anyone on these committees.

9. At page 6 the brief declares, "In essence, the LA–PRC became a device by which the LA–PRC members wielded unlimited power to destroy the practice of doctors who refused to 'join the family.'" No citation to the record supports this statement.

10. At page 6 the brief declares that "SIGMOND was told by Jackie Ershoff, of State Compensation Insurance Fund, that they would only pay the amount recom-

mended by the PRC (CR 112, '30'—lines 5–8)." This exhibit has nothing to do with the State Compensation Insurance Fund.

## ANALYSIS

By Rule 1–1 of the Rules of this court, the Federal Rules of Civil Procedure are part of the rules of this court "whenever relevant." Federal Rule of Civil Procedure 11 prescribes that "[t]he signature of an attorney" constitutes "a certificate by the signer" that to the "best of the signer's knowledge, information, and belief formed after reasonable inquiry," the paper the attorney is filing with the court is "well grounded in fact." Rule 11 prescribes that where the signing attorney has misrepresented the record the court "shall impose" "an appropriate sanction" upon the attorney. The imposition of sanctions is mandatory. *In Re Curl,* 803 F.2d 1004, 1007 (9th Cir.1986).

Misrepresentation of the record on appeal is poor strategy. Alert opponents will detect the error. An appellate panel of three judges assisted by a staff of able law clerks will confirm what the opponents point out or will itself uncover the defects. The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court. The burden of ascertaining the true state of the record would be intolerable if misrepresentation was common. The court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists. In part for this reason, Federal Rule of Appellate Procedure 28(a)(3) requires the appellants' brief to contain a statement of facts "with appropriate references to the record." Counsel's professional duty "requires scrupulous accuracy in referring to the record." *Markowitz & Co. v. Toledo Metropolitan Housing Authority,* 608 F.2d 699, 704 (6th Cir.1979). A court should not have "to pore over an extensive record as an alternative to relying on counsel's representations." *Id.* Failure to comply with the admonition of rule 28(a)(3) can result in sanctions. *See David v. United States,* 820 F.2d 1038, 1044 (9th Cir.1987).

In this case the misrepresentations were many. The misrepresentations were material in that they were directed to showing that there were disputable facts preventing summary judgment in favor of defendants. The misrepresentations went to the heart of the appeal.

Boucher is accordingly suspended from practice before this court for a period of six months from the date of this order.