[Crim. No. 16226. Fourth Dist., Div. Two. May 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES W. HESSLINK, Defendant and Appellant.

784

COUNSEL

Bruce Daniel Rosen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, John W. Carney and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

KAUFMAN, J.—Charles W. Hesslink (defendant) was found guilty by a jury of forcible oral copulation (Pen. Code, § 288a, subd. (c), count 1); extortion (Pen. Code, § 518, count 2); and impersonating a police officer, a misdemeanor (Pen. Code, § 146a, count 3). As to several similar charges involving a different alleged victim the jury was unable to agree and a mistrial was declared. Defendant was sentenced to state prison for the lower base term of three years on count 1 and the lower base term of two years on count 2 to be served concurrently. On count 3 defendant was granted probation for a period of two years.

Defendant appeals contending: The conviction of extortion must be reversed because (1) it is not supported by the evidence and (2) the court erred in failing to deliver, *sua sponte,* an instruction on specific intent; the conviction of forcible oral copulation must be reversed because (1) the evidence does not show the commission of that crime and (2) in instructing on that crime the court included legal theories of liability not justified by the evidence; defendant's motion for new trial on the ground of insufficiency of the evidence was erroneously denied as to the conviction for forcible oral copulation; contrary to the court's express statement of its understanding, it had the authority, pursuant to Penal Code section 1385, to grant him probation notwithstanding the provisions of Penal Code section 1203.065, subdivision (a), mandating a state prison sentence; and, finally, Penal Code section 1203.065, subdivision (a), as applied to the facts of this case results in unconstitutionally cruel and unusual punishment.

*Facts*

The victim, a prostitute, was in the area of Chestnut and Seventh Streets in Riverside about 11 a.m. on November 30, 1982. Sometime between 12 and 1 p.m., defendant, driving a blue Chevrolet Malibu, stopped his car on Seventh Street. The victim walked over to defendant's car and talked to him because she thought he might be a customer. Defendant told the victim he was looking for some "head," a street term the victim knew to mean an act of oral copulation. The victim agreed and got into defendant's car. A price of $20 for the act of oral copulation was agreed to. The two then drove for about five minutes to a secluded road under the freeway near Fairmont Park

in Riverside. When the car stopped, defendant and the victim engaged in conversation during which the victim told defendant that she had a six-year-old daughter and was separated from her husband.

Defendant displayed a badge and handcuffs and told the victim he was a police officer and would have to arrest her. Defendant then proceeded to pat the victim down in a nonsexual manner. He asked her if she had ever before been arrested and she replied she had not. The victim was fearful she was going to go to jail. Defendant then initiated a discussion about working out a deal with her since she would not have anyone to look after her daughter while she was in jail. Defendant insinuated that the victim's daughter would be taken away from her. The victim interpreted defendant's statement to mean that her daughter might be placed in a foster home.

Defendant asked the victim if she had $2,500 to post bail. When the victim replied that she did not, defendant stated that he could possibly get the bail reduced. The victim believed at that time that defendant was interested in money and that if she gave him some he would not take her to jail. She then reached into her back pocket and handed defendant $50. Defendant accepted the money.

Defendant then unzipped his pants, exposed himself and asked the victim if she could do him another favor. Defendant placed his hand on the victim's head and pushed her face down toward his penis. The victim then orally copulated defendant. She did so to avoid being taken to jail.

After the victim finished orally copulating him, defendant gave the victim a lecture on vice officers. He intimated to her that some other vice officers would be interested in working out a deal with her, but warned her that one particular officer would arrest her for soliciting. Defendant then drove her back to Chestnut and University. Before dropping her off at that location, he told her that his name was Rick Thomas and gave her a phone number where he could be reached. He also told her that she would see him around and that if she did not have a date when he came by she should come over to his car and they would take a ride. As defendant drove away, the victim memorized all but one digit of his license plate number and wrote it down immediately thereafter.

The victim called the police later that day but did not reveal all of the facts for fear she would get herself into trouble. The victim later reported the entire incident to Officer Ken Fouse. She gave Fouse a physical description of defendant, including the fact that defendant had a dark scar on his lower left abdomen, a description of defendant's car and the license plate number. Based on this information, defendant's car was located on December 6, 1982. Defendant was arrested and taken to Riverside, as was his car.

Officer Fouse later searched defendant's car in the rear parking lot of the Riverside police station and found a badge and a holder and a pair of hand-cuffs under a floor mat on the driver's side. The handcuffs were marked with the initials "CWH."

*Discussion*

I

*The Extortion Conviction*

*Sufficiency of the Evidence*

As we shall explain, we agree with defendant's contention that extortion is a specific intent crime and that his conviction of that charge must be reversed because the trial court failed to instruct the jury on the required specific intent. However, because of the nature of several of defendant's arguments concerning the sufficiency of the evidence and the possibility of retrial on that charge, it is appropriate that we address preliminarily his contention that the extortion conviction is not supported by substantial evidence.

■ Citing a long list of cases in which the accused demanded from the victim a specific sum of money, defendant points out that he did not and argues that evidence of a request or demand for a specific sum is required to support a conviction for extortion. We do not agree. Penal Code section 518 which defines the crime of extortion contains no such requirement. It reads: "Extortion is the obtaining of *property* from another, with his consent, . . . induced by a wrongful use of force or fear, or under color of official right." (Italics added.)

It is true that in many cases a specific sum of money was requested or demanded, but so far as we are informed no appellate decision has held or stated that evidence of a demand or request for a specific sum is a prerequisite to a conviction of extortion.

■ Next, defendant asserts that he had a legal right to make a citizen's arrest of the victim for the misdemeanor of soliciting an act of prostitution (Pen. Code, § 647, subd. (b)), and argues that since he had the right to make such an arrest, his threat to arrest the victim could not be "a wrongful use of . . . fear" under the statute. Not so. First, even if defendant had the right to arrest the victim, he was not at liberty to threaten to arrest her for the purpose of extorting money or property from her. (*People* v. *Powell* (1920) 50 Cal.App. 436, 441 [195 P. 456]; cf. *People* v. *Beggs* (1918) 178

Cal. 79, 84-85 [179 P. 152].) As stated by the court in *Powell*: "But we do not think that, merely because of the conceded guilt of the complaining witness, defendant is thereby relieved of the pains and penalties of the offense charged—extortion. . . . Under section 518, . . . obtaining the payment of money from a violator of the ordinance referred to by a threat of arrest and detention if the payment be not made, is extortion, and this without regard to the exercise of good faith in threatening to make the arrest." (50 Cal.App. 436, 441.)

Further, although it is true a private person as well as a police officer may arrest another for the commission of a misdemeanor offense if committed or attempted in his or her presence (*Davis* v. *Pacific Teleph. etc. Co.* (1899) 127 Cal. 312, 322 [59 P. 698]; *People* v. *Campbell* (1972) 27 Cal.App.3d 849, 853 [104 Cal.Rptr. 118]; Pen. Code, § 837), nevertheless, to justify an arrest for a misdemeanor without a warrant, the arrestor must proceed as soon as possible to make the arrest, and if instead of doing so he goes about other matters unconnected with the arrest, the right to make the arrest ceases. (*Hill* v. *Levy* (1953) 117 Cal.App.2d 667, 670 [256 P.2d 622].)

Here, while defendant may initially have been authorized as a private citizen to arrest the victim for solicitation of prostitution, the right ceased to exist when defendant failed to inform the victim of his authority as a citizen to arrest her, failed to make such an arrest promptly and deliver the arrested victim to the proper legal authority, illegally represented himself to be a police officer, and engaged in illegal and unrelated matters not connected with the offense of soliciting prostitution.

*Failure to Instruct on Specific Intent*

 As noted preliminarily, we agree with defendant that extortion is a specific intent crime and that the trial court was required *sua sponte* to so instruct the jury. It is well settled, of course, that the trial court has a duty in criminal cases, even in the absence of a request, to instruct the jury on the general principles of law relevant to the issues raised by the evidence. (E.g., *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) The general principles of law governing the case are those principles closely and openly connected with the facts before the court and necessary for the jury's understanding of the case. (*Id.*) The duty to instruct on the general principles of law governing the case encompasses at a minimum the elements that must be proved to support a conviction. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892].) Thus, in a case in which specific intent is a

required element, the court must instruct the jury as to that requirement even in the absence of a request. (*People* v. *Ford, supra,* 60 Cal.2d 772, 793, and cases there cited.)

■■ The dispositive question therefore is whether the crime of extortion requires proof of a specific intent. Urging it does not, the Attorney General relies on the generally accepted approach to the problem set forth in *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370]: "Specific and general intent have been notoriously difficult terms to define and apply, and a number of text writers recommend that they be abandoned altogether. [Citation omitted.] Too often the characterization of a particular crime as one of specific or general intent is determined solely by the presence or absence of words describing psychological phenomena— 'intent' or 'malice,' for example—in the statutory language defining the crime. *When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence,* we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a *general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence,* the crime is deemed to be one of *specific intent.*" (Italics added; accord *People* v. *Daniels* (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232].)

As previously quoted, Penal Code section 518 reads in relevant part: "Extortion is the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear, or under color of official right." Applying the *Hood* formulation to this language, the Attorney General argues that the act proscribed is "the obtaining of property," that until the property is obtained the crime is not complete and that after the property is obtained there is no further act to be done or no further consequence to be achieved and that, therefore, the crime must be one of general intent rather than specific intent.

While we cannot fault the logic in the argument, we are unable to agree with it. We think the problem stems from the way in which the statute is worded. *In substance,* what is proscribed is the successful wrongful use of force or fear to obtain property from another with his or her consent. Viewed from that standpoint, the elements of the offense are: (1) A wrongful use of force or fear, (2) with the specific intent of inducing the victim to consent to the defendant's obtaining his or her property, (3) which does in fact induce such consent and results in the defendant's obtaining property from the victim. Applying the *Hood* formulation to the elements thus stated, the intent required is seen to be a specific one. The crime requires an unlawful use of force or fear with the intent of achieving a further conse-

quence, the inducement of another person to consent to the actor's obtaining the other's property. (See 31 Am.Jur.2d, Extortion, Blackmail, etc., § 9, pp. 906-907; cf. *People* v. *Francisco* (1931) 112 Cal.App. 442, 444 [297 P. 34].)

The crime of extortion is related to and sometimes difficult to distinguish from the crime of robbery. (See, e.g., Perkins on Criminal Law (2d ed. 1969) pp. 372-373; 1 Witkin, Cal. Crimes (1963) § 443, p. 409; see also *In re Stanley E.* (1978) 81 Cal.App.3d 415 [146 Cal.Rptr. 232].) It is instructive to observe that the statutory definition of robbery found in Penal Code section 211 is very similar in structure to the definition of extortion found in Penal Code section 518, and that although the statutory language in section 211 does not require a specific intent,[1] the decisions have nevertheless determined that a prerequisite to conviction of robbery is proof of a specific intent, the intent to steal. (E.g., *People* v. *Ford, supra,* 60 Cal.2d 772, 793, and cases there cited.)

█ Nor can we conclude the failure to instruct on specific intent was not prejudicial. There appears to have been no instruction whatever on intent in connection with the charge of extortion, and it appears therefore that, in effect, the essential element of intent as to that offense was removed from the jury's consideration. If that is true, the error must be deemed prejudicial under the decision in *People* v. *Garcia* (1984) 36 Cal.3d 539, 549-550 [205 Cal.Rptr. 265, 684 P.2d 826].

Even if it were otherwise, however, under the evidence adduced in the instant case we could not conclude the error was harmless. Defendant never made any express request or demand for money. The victim testified that without prior discussion of her paying defendant any money, she reached into her pocket, pulled out the $50 and handed it to defendant in the hope that would cause him not to arrest her or take her to jail. One inference to be drawn from the evidence was that defendant intended by his conduct to obtain oral copulation without payment and that the $50 given him by the victim was an unexpected windfall.

We conclude the conviction for extortion must be reversed.

## II

### Forcible Oral Copulation Conviction

#### Sufficiency of the Evidence

█ Defendant first urges that because no evidence was presented indicating the victim's mouth touched his penis, there was not sufficient evi-

---

[1]Penal Code section 211 reads: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

dence to support his conviction for forcible oral copulation. Defendant is mistaken.

It is true, of course, that conviction of forcible oral copulation requires evidence of oral-genital contact. (*People* v. *Wilson* (1971) 20 Cal.App.3d 507, 510 [97 Cal.Rptr. 774].) However, although the victim in this instance did not specifically use the words "my mouth was placed on defendant's penis," her testimony taken as a whole sufficiently established the fact that that is what took place.

The evidence was that defendant told the victim he wanted some "head." At trial, it was testified to that the term "head" meant oral copulation. The victim testified that defendant unzipped his pants and exposed himself to her, put his hand on her head and pushed her head toward his penis and that she orally copulated him. The victim's testimony clearly supports a finding that her mouth did touch defendant's penis. Although we perceive none, any lack in clarity as to the words used to describe the act which took place does not require reversal; it went only to the weight to be accorded the testimony by the jury. (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 790 [190 Cal.Rptr. 554].)

*Denial of Motion for New Trial*

Having concluded the evidence was sufficient to support defendant's conviction of forcible oral copulation, it follows that the trial court did not abuse its discretion in denying his motion for new trial as to that conviction, made on the ground of insufficiency of the evidence.

*Instruction on Theories of Liability Not Justified by the Evidence*

When instructing the jury as to elements the prosecution must prove to establish guilt for forcible oral copulation, the court stated: "One, that a person committed an act of oral copulation with another person. Two, that such act of oral copulation was against the will of such other person. And three, that such act of oral copulation was committed by means of force, violence, duress, menace, or fear of immediate and unlawful bodily harm." While defendant concedes that this is an accurate statement of the law, he urges that the court's instruction on the third element, "by means of force, violence, duress, menace or fear of immediate and unlawful bodily harm," contained alternative theories of liability having no support in the evidence and that the jury may have predicated its verdict on a theory not supported by the evidence. He argues that there was no evidence presented at trial to support the theory that defendant committed oral copulation by (1) means of force, (2) violence, or (3) fear of immediate and unlawful bodily injury.

"It is error, of course, for the court to give an instruction which, although correctly stating a principle of law, has no application to the facts of the case at trial. Such error does not impel a reversal, however, unless it is affirmatively shown that the error has prejudiced the defendant [citations omitted], and that there is a reasonable probability that, absent the error complained of, a verdict more favorable to defendant would have been reached." (*People* v. *Nunez* (1970) 7 Cal.App.3d 655, 662 [86 Cal.Rptr. 707]; accord *People* v. *Saddler* (1979) 24 Cal.3d 671, 681-684 [156 Cal.Rptr. 871, 597 P.2d 130].) On appeal a jury's guilty verdict will be overturned because of an error in instruction of the jury if and only if it "affirmatively appears that the error was likely to have misled the jury." (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 46 [121 Cal.Rptr. 269]; see *People* v. *Mayberry* (1975) 15 Cal.3d 143, 159 [125 Cal.Rptr. 745, 542 P.2d 1337].)

In the instant case, the prosecution's theories were duress and menace; it did not urge force, violence or fear of immediate bodily injury nor was there any evidence whatever of those things. The victim testified she would not have orally copulated defendant if he had not told her: (1) That he was a police officer; (2) that he was going to place her under arrest; (3) that he was going to take her to jail; and (4) that her child might be taken away from her. The jury was told that not all the instructions were necessarily applicable and was admonished to disregard inapplicable instructions. Presumably it did so.

It would have been preferable for the court to delete from the instruction the reference to force, violence and fear of immediate bodily harm, but in view of the evidence, the theory urged by the prosecution and the court's instruction to the jury to disregard inapplicable instructions, the jury could not possibly have been misled and the inclusion of the language complained of was not prejudicial.

## III

### The Sentence Imposed

#### Trial Court's Authority to Grant Probation

 Several times in the course of sentencing defendant the court stated it felt the provisions of Penal Code section 1203.065, subdivision (a), made a prison sentence mandatory but if defendant were not thus ineligible for probation, the court would have granted probation conditioned on the service of a term in county jail of up to one year. Defendant contends the court was incorrect in concluding that Penal Code section 1203.065, subdivision

(a), precluded probation. He argues that notwithstanding the mandatory language of that statutory provision,[2] the court was authorized to grant probation pursuant to Penal Code section 1385.[3] We do not agree.

Subdivision (a) of Penal Code section 1203.065 commences: "Notwithstanding any other provision of law, probation shall not be granted . . . ." (See fn. 2, *ante.*) The Attorney General urges that the introductory phrase "[n]otwithstanding any other provision of law" excludes the operation of Penal Code section 1385. Defendant, however, points out that in both sections 1203.066, subdivision (a) and 1203.075 when the Legislature intended to preclude the court's exercise of authority under section 1385, it expressly excluded the operation of section 1385 (i.e., "nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385"). He argues that had the Legislature meant to exclude the operation of section 1385 in respect to section 1203.065, subdivision (a), it would have expressly so stated as it did in sections 1203.066, subdivision (a) and 1203.075. We are not persuaded.

First, the phrase, "notwithstanding the provisions of section 1203, probation shall not be granted," found in sections 1203.066 and 1203.07, has been interpreted to preclude application of section 1385. (*People v. Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328]; *People v. Ibarra* (1980) 114 Cal.App.3d 60 [170 Cal.Rptr. 440].) The phrase "notwithstanding any other provision of law" is manifestly broader and more inclusive than the language used in sections 1203.066 and section 1203.07. Section 1385 is an "other provision of law," and the Legislature must be deemed to have intended to foreclose the application of section 1385 by its use of the expression "Notwithstanding any other provision of law."

---

[2]Penal Code section 1203.065 provides: "(a) *Notwithstanding any other provision of law,* probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person convicted of violating subdivision (2) of Section 261, or Section 264.1, or Section 266h, or Section 266i, or Section 266j, or 289, or of committing sodomy or oral copulation in violation of Section 286 or *288a by force, violence, duress, menace or threat of great bodily harm* or subdivision (c) or Section 311.4. [Italics added.]

"(b) Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person convicted of a violation of Section 220 for assault with intent to commit rape, sodomy, oral copulation or any violation of Section 264.1, subdivision (b), of Section 288, or Section 289.

"When probation is granted, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by such a disposition."

[3]Penal Code section 1385 provides: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

Secondly, much of subdivision (b) of section 1203.065 would have been totally unnecessary had the Legislature not intended the language "notwithstanding any other provision of law" to preclude exercise of the court's discretion under Penal Code section 1385. Subdivision (b) covers less serious crimes than those enumerated in subdivision (a) and expressly allows for the exercise of judicial discretion in unusual circumstances where the interests of justice would best be served by a grant of probation. If section 1385 were intended to apply to subdivision (a) there would have been no need for the Legislature to include an express grant of discretionary authority in subdivision (b).

Moreover, section 1385 is a general statute relating to dismissals in furtherance of justice (see fn. 3, *ante*), while section 1203.065 is a specific statute relating to the power of the court to grant probation in respect to specified crimes (see fn. 2, *ante*). ▬ A specific provision relating to a particular subject will govern over a general provision even though the general provision standing alone would be broad enough to include the subject to which the provision relates. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) Accordingly, the restrictions contained within Penal Code section 1203.065, subdivision (a), govern here.

▬ We conclude that when proper findings under section 1203.065, subdivision (a), have been made, the mandatory provisions of that section may not be avoided by the court's exercising its authority under section 1385.

*Cruel and Unusual Punishment*

▬ Defendant next contends that if, as we have determined, Penal Code section 1203.065, subdivision (a), precludes the granting of probation, then as applied to him and in the circumstances of this case, a mandatory prison sentence constitutes cruel and unusual punishment. He points out that he has no record of previous conviction, that the occupation of the victim in this case makes it apparent that she is not a person who would suffer great emotional trauma on account of the crime and that no force, violence or personal injury was involved. He also points out that during sentencing the trial court expressed its feeling that a state prison sentence was disproportionate punishment under the circumstances.

Be all that as it may, at the time of sentencing, the trial court was aware of the decision in *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697] and apparently of its power to consider whether the statutorily mandated state prison sentence might constitute cruel and unusual punishment, and it determined that question adversely to defendant.

After a somewhat prolonged statement concerning the sentence it intended to pronounce, the court concluded: "I think after all this talking, what I'm saying is that I am compelled by law to sentence Mr. Hesslink to three years in state prison. . . . [E]ven in *Dillon,* it has to be far out of proportion— and I cannot find that *Dillon* and the cases it talks about, when applied to the facts of this case, are such that I could go against the legislative mandate and consider local time and probation."

Thereafter, the district attorney indicated to the court his belief that "a bottom line of 18 months does not seem to be unreasonable for the conduct that was proved at the trial." At that point the court interrupted to respond: "That is why I cannot find the disproportionality. The problem is the state prison conviction."

We agree with both the trial court and the district attorney. A three-year state prison sentence cannot possibly be viewed as so disproportionate to defendant's conduct as to constitute cruel and unusual punishment in the constitutional sense. The circumstances here are far removed from the unsophisticated teenage panic involved in *Dillon.* Defendant was a 32-year-old adult of at least average intelligence at the time the crime was committed, and the manner in which the crime was committed showed preplanning and premeditation. Although defendant has no record of other criminal convictions, there was evidence that defendant committed similar crimes against other prostitutes using the same modus operandi.

■ Contrary to defendant's argument, a statutory prohibition of probation is not considered cruel or unusual punishment. (*People* v. *Ibarra, supra,* 114 Cal.App.3d 60, 66; *Bosco* v. *Justice Court* (1978) 77 Cal.App.3d 179, 188 [143 Cal.Rptr. 468]; *People* v. *Solorzano* (1978) 84 Cal.App.3d 413, 415-416 [148 Cal.Rptr. 696].)

■ Defendant's punishment of three years in state prison is not so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. It therefore does not constitute cruel and unusual punishment.

*Necessity for Resentencing*

In the appellate judgment defendant's conviction of extortion will be reversed and his concurrent two-year state prison sentence for that offense will be vacated by the reversal. If defendant is retried on the extortion charge and is again convicted, resentencing will, of course, be necessary. However, if he is not retried on the extortion charge, we perceive no necessity for resentencing him in view of the mitigated sentence imposed on

the forcible oral copulation conviction and the probationary sentence pronounced on the misdemeanor conviction for impersonating a police officer. Having properly determined that defendant must be sentenced to state prison and that the sentence was not unconstitutional as cruel and unusual, the court imposed the lowest term available on the forcible oral copulation conviction and granted defendant probation on the misdemeanor. No useful purpose would be served, therefore, in remanding the case for resentencing.

### *Disposition*

Defendant's conviction of extortion (Pen. Code, § 518) is reversed and the sentence imposed thereon is vacated. Defendant must be resentenced only if he is again tried and convicted of the extortion charge. If he is not retried or not again convicted of the extortion charge, the abstract of judgment must be amended to eliminate the extortion conviction and the sentence imposed thereon. In all other respects the judgment is affirmed.

Morris, P. J., and Rickles, J., concurred.

A petition for a rehearing was denied May 17, 1985, and the petitions of all parties for review by the Supreme Court were denied August 15, 1985.