[No. A067105. First Dist., Div. Three. July 19, 1995.]

CRAIG A. JOHANSON, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Martin H. Milas, Assistant Attorney General, William S. Clark and T. Michelle Laird, Deputy Attorneys General, for Defendant and Appellant.

Cotsirilos & Campisano and Guy A. Campisano, Jr., for Plaintiff and Respondent.

OPINION

CORRIGAN, J.—The Department of Motor Vehicles (DMV) appeals from the superior court's grant of mandamus overturning the administrative license suspension of respondent Dr. Craig A. Johanson. The court below found Johanson was not properly arrested for driving under the influence of alcohol. We disagree and reverse.

### STATEMENT OF THE CASE

Johanson was arrested on October 21, 1993, for driving under the influence of alcohol, a violation of Vehicle Code section 23152, subdivision (a).[1] When he refused to submit to a chemical test of his blood-alcohol level, a blood sample was drawn involuntarily. He was immediately notified that, unless he requested an administrative review hearing, his driver's license would be suspended under section 13353 for refusing to submit to a chemical test. Upon Johanson's timely request for a hearing, the suspension was stayed.

The administrative hearing was conducted on December 14, 1993. The following day, the hearing officer issued a written notice of findings and decision, lifting the stay and reinstating the suspension. On December 20, Johanson requested departmental review of the hearing officer's decision (§ 14105.5).

On March 22, 1994, DMV issued its notice of decision after the departmental review, upholding the hearing officer's determination. On April 20, Johanson filed a petition for writ of mandamus in the superior court. DMV demurred on May 11, alleging the petition was barred by the statute of limitations. The court overruled the demurrer on May 18 and granted the writ on June 8, ruling that Johanson had not been lawfully arrested by either a police officer or a citizen.

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

## STATEMENT OF FACTS

At approximately 2 a.m. on October 21, 1993, Johanson tried to drive his new Jaguar out the entrance lane of a parking facility in San Francisco. The attendant, Gary Hilmoe, told Johanson he could not accept his payment for parking unless he backed his car up and drove out the exit lane. Johanson became angry and broke the wooden entrance gate. He returned to his car but found he had not broken enough of the gate to allow his car to pass. He got out of the car and broke more of the gate. By this time, a security guard had arrived and positioned himself in front of Johanson's car. Johanson again returned to his car and drove it forward, striking the security guard slightly. Hilmoe phoned the police.

Officer Craig responded to the report of an intoxicated person. When she arrived, she saw Johanson screaming at Hilmoe and the guard. She noted Johanson had bloodshot eyes, slurred speech, and was unsteady on his feet. Hilmoe told her what had happened, including that he had seen Johanson driving. He told the officer he wanted Johanson arrested "because he destroyed our gate arm, for one thing, and he was too drunk to drive out the . . . drives [sic] goin' the wrong way."[2] Hilmoe signed a citizen's arrest form that indicated he was arresting Johanson for malicious mischief and vandalism. Hilmoe did not tell Johanson he was arresting him for driving under the influence.

Johanson was informed of his obligation to take a blood, breath, or urine test. He refused. He also refused to complete field sobriety tests. A blood sample was drawn from him involuntarily. His blood-alcohol level was 0.20 percent.

## DISCUSSION

### A. *Statute of Limitations*

 DMV first alleges Johanson's petition for writ of mandamus was barred by the statute of limitations. We disagree.

The Vehicle Code provisions relevant to the suspension of driving privileges and the administrative and judicial review of such action constitute a puzzling statutory maze. In an effort to work through the labyrinth, we begin with section 13353, the statute that provides for suspension for failure to submit to a chemical test.

---

[2]Hilmoe's testimony was slightly contradictory on this point in that he also testified he told the officer he wanted Johanson arrested for vandalism.

Section 13353, subdivision (a) commands the DMV to suspend the driving privilege "upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer . . . ." That suspension does not take effect until 30 days after the giving of written notice to the driver. (§ 13353, subd. (a)(3)(C).)

Section 13353, subdivision (c) requires the DMV, upon receipt of the sworn statement, to conduct a departmental review in which the following issues are determined: "(1) Whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153. [¶] (2) Whether the person was placed under arrest. [¶] (3) Whether the person refused to submit to, or did not complete, the test or tests after being requested by a peace officer. [¶] (4) Whether, except for the persons described in subdivision (a) of Section 23157 who are incapable of refusing, the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to, or did not complete, the test or tests."

DMV's obligation to conduct this initial review and the issues to be determined are set out again in section 13557, subdivisions (a) and (b). This section, however, also mandates that this initial review shall be based upon the officer's sworn statement and "any other evidence accompanying the report." Consequently, we shall refer to this initial departmental review as a paper review of the order of suspension.

The driver may request an independent departmental hearing, if the request is made within 10 days of receiving written notice of suspension. (§§ 13558, subd. (b), 13353, subd. (d).) Such a request obviates DMV's obligation to conduct the paper review. (§ 13557, subd. (e).) Finally, the issues to be determined at the hearing are the same as those at the paper review, and DMV is required to issue a written notice of decision. (§ 13558, subds. (c)(1) & (f).)[3]

Within 30 days of the issuance of the written notice of decision following a hearing, the driver may petition the *court* for review of DMV's decision

---

[3]DMV's obligation to conduct the hearing is set out again in section 14100, and its obligation to give notice of decision is set out again in section 14105.

upholding suspension. This 30-day limitation supersedes the more general provisions of sections 14400 and 14401. (§ 13559, subd. (a).)[4]

Alternatively, within 15 days of the effective date of the decision, the driver may request an independent *departmental* review of the hearing officer's decision. (§ 14105.5, subd. (a).) This review shall be based upon the hearing report, documentary evidence, and findings. (§ 14105.5, subd. (b).) DMV is required to issue a written notice of its decision following this review as well. (§ 14105.5, subd. (c).)

Thus, the statutory scheme establishes two independent procedures for review of the hearing officer's determination, one judicial, the other administrative. While the efficiency of two procedures may be doubted, their existence cannot be denied. Certainly, the driver may wish to avail himself of judicial review sooner, though the statutory scheme does not require him to do so. He may, instead, opt for further departmental review. Thereafter, however, he may seek judicial review of the department's final decision by way of section 14401, subdivision (a), which reads in part: "Any action brought in a court of competent jurisdiction to review any order of the department . . . suspending, or revoking the privilege of a person to operate a motor vehicle shall be commenced within 90 days from the date the order is noticed." While judicial review immediately following the hearing is subject, by explicit statutory language, to the 30-day statute of limitations (§ 13559, subd. (a)), judicial review following the final departmental action is subject to the more generous 90-day limitation.

Here, Johanson chose not to seek judicial review immediately following the hearing, but instead sought further departmental review. Upon receiving DMV's final decision on March 22, 1994, Johanson had 90 days to seek a writ. (§ 14401, subd. (a).) His petition was filed on April 20, 1994, well within the statutory limit.[5]

---

[4]Section 13559, subdivision (a) reads in part: "Notwithstanding Section 14400 or 14401, within 30 days of the issuance of the notice of determination of the department sustaining an order of suspension or revocation of the person's privilege to operate a motor vehicle after the hearing pursuant to section 13558, the person may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence."

[5]This case focuses light on a problem with DMV's forms. In the notice of findings and decision issued on December 15, 1993, following the hearing, both the administrative and judicial review procedures are explained. The notice does not indicate that by requesting departmental review one forfeits all judicial review. Johanson chose further departmental review. Thereafter, he was informed on March 22 that the original suspension had been upheld. This March notice also informed him he had a right to superior court review within "30 days from the date on the bottom of your Administrative Per Se Notice of Findings and Decision [issued on December 15, 1993]." Ironically, this notice tells the motorist that (1) he

## B. *Lawfulness of Arrest*

■ Secondly, DMV alleges Johanson was lawfully arrested, contrary to the trial court's determination. We agree and reverse on this basis.

■ DMV may not suspend or revoke a driving privilege under section 13353 unless the driver was lawfully arrested for a violation of section 23152. (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 760 [280 Cal.Rptr. 745, 809 P.2d 404].) A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence. (*Id.* at p. 761; Pen. Code, § 836, subd. (a)(1).)[6] The "in the presence" requirement necessitates that the officer see the vehicle move. (*Mercer, supra,* at p. 769.) (2b) Here, Officer Craig did not see Johanson's car move; therefore, she could not lawfully arrest him for driving under the influence.

A lawful warrantless arrest by a citizen also requires that the misdemeanor occur in the citizen's presence. Here, the misdemeanor of driving under the influence did occur in Hilmoe's presence. Therefore, Hilmoe clearly could have lawfully arrested Johanson for driving under the influence. Johanson claims, however, that Hilmoe simply did not do so. Johanson cites the citizen's arrest form signed by Hilmoe which indicates an arrest for malicious mischief and vandalism only. While Hilmoe did not expressly arrest Johanson for driving under the influence, the question remains whether his conduct constitutes an implicit arrest sufficient to satisfy the rule of *Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d 753.

In *Padilla* v. *Meese* (1986) 184 Cal.App.3d 1022 [229 Cal.Rptr. 310], Miller, an inspector for the Department of Food and Agriculture acting as a private citizen, stopped Padilla's truck at an inspection station based upon his belief that Padilla was driving under the influence. (*Id.* at p. 1025.) Miller summoned a highway patrol officer, Nagel, and informed him of his observations. The officer actually arrested Padilla. Miller testified that it was not his procedure to make citizen's arrests and that he did not intend to arrest Padilla. (*Id.* at p. 1031.)

■ The court found that a valid citizen's arrest had occurred: "[T]he delegation of the physical act of arrest need not be express, but may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect. [Citation.] [¶] The actions commenced

---

had a right and (2) the right expired over 60 days previously. Besides its Kafkaesque qualities, the notice ignores the 90-day provision set out in section 14401.

[6]The exceptions to this rule are not relevant here. (§ 40300.5.)

by Miller and completed by Nagel in this case conform in all significant respect [*sic*] to a standard citizen's arrest with delegation of the physical arrest to the highway patrol officer." (*Padilla* v. *Meese, supra,* 184 Cal.App.3d at pp. 1030-1031.) "In considering whether a citizen's arrest was made, and the legality thereof, it is the substance and not any 'magic words' which we must consider. [Citation.]" (*Id.* at p. 1032; *People* v. *Harris* (1967) 256 Cal.App.2d 455, 459 [63 Cal.Rptr. 849].)

■ Here, Hilmoe did not formally arrest Johanson for driving under the influence, but rather impliedly delegated his authority to do so to Craig. We are persuaded that the citizen's arrest form is not dispositive in these circumstances, nor is Hilmoe's statement to Craig that he wanted Johanson arrested for vandalism. Hilmoe witnessed the offense, summoned the officer, reported his observations, and pointed out the suspect. While Hilmoe did not utter or write the " 'magic words,' " the substance of his actions constituted a valid citizen's arrest.

Hilmoe's failure to use the magic words can be easily explained under the circumstances. Hilmoe's concern over the vandalism to his place of employment was naturally uppermost in his mind. The investigation of the vandalism was complete upon the officer's arrival and Hilmoe's statement of events. The investigation of the driving offense, however, continued with Craig's request that Johanson complete field sobriety tests and a chemical test. While a citizen might have probable cause to arrest an individual for driving under the influence, one might naturally refrain from doing so given the ordinary investigative steps to come.

Johanson further contends that Hilmoe lacked probable cause to arrest him. In support of this contention, he cites the trial court's finding to that effect. The finding resolved a question of law, which we review de novo based upon the facts as presented in the record. (*Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 503 [81 Cal.Rptr. 800].) At the hearing, Hilmoe testified that he had wanted Johanson arrested "because he destroyed our gate arm, for one thing, and he was too drunk to drive . . . ." He testified to his observations of Johanson's conduct, which, taken as a whole, constitute probable cause in support of his conclusion that Johanson was under the influence. Hilmoe characterized Johanson's behavior as "actin' like a little child . . . ." At approximately 2 a.m., Johanson attempted to drive out of the garage the wrong way. When asked to reverse his course, he became belligerent and refused to comply, eventually breaking the wooden gate twice and striking the security guard with his car. Additionally, Craig's observations of Johanson's bloodshot eyes, slurred speech, and unsteady gait not only confirm Hilmoe's opinion that Johanson was drunk but are the kind of indications Hilmoe would have easily observed.

Finally, Johanson contends that his arrest was unlawful because Hilmoe did not inform him of the reason for his arrest per Penal Code section 841. That section provides an exception for this formal requirement where the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission. In *People* v. *Harris, supra,* a private citizen pursued the defendant after a hit-and-run. The citizen stopped the defendant and detained him until the police arrived. Although the citizen did not inform the defendant of the reason for his arrest, the court found the immediate pursuit exception to Penal Code section 841 applied. (256 Cal.App.2d at p. 459.) Our case is similar. When there is an appreciable lapse in time such that the person arrested would not necessarily be familiar with the circumstances justifying the arrest, Penal Code section 841 requires a formal advisement. That is not the case here, where the circumstances justifying Johanson's arrest and his arrest constituted one brief and continuous course of events.

There is no real dispute that Johanson drove his car while under the influence of alcohol or that Hilmoe had probable cause to arrest him for that offense. Johanson's blood-alcohol level was tested at 0.20 percent, and his judgment was impaired to the extent that he left his car twice to break off parts of a wooden barrier preventing him from driving in the wrong direction. Subsequently, he used his car to strike a security guard. Hilmoe, who observed all these factors and more, summoned police and effected a citizen's arrest. To conclude such a record does not support a license suspension because the citizen's arrest was not completely articulated would elevate form over substance in a manner defying both logic and the legitimate concern for public safety underlying the statutes themselves.

### Disposition

The order of the superior court issuing a writ of mandamus is reversed. The administrative suspension of respondent's driving privilege is affirmed. Costs to appellant.

Chin, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied August 9, 1995, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 26, 1995. Kennard, J., and George, J., were of the opinion that the petition should be granted.