[No. E048326. Fourth Dist., Div. Two. June 25, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
CRAIG STEVEN BLOOM, Defendant and Appellant.

1498

## COUNSEL

Scott Weis and Patrick E. Dunah, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Emily R. Hanks, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Defendant Craig Steven Bloom made more than 40 harassing calls to 911 in a single evening, causing a dispatcher to request that he be taken into custody pursuant to a citizen's arrest, after completing the requisite forms. Defendant resisted arrest, inflicting minor injuries on the

arresting officers. He was charged with battery on a peace officer (Pen. Code,[1] § 243, subd. (c)), resisting an executive officer in the performance of his duty (§ 69), and making annoying or harassing calls to 911. (§ 653x.) He pled guilty to all three counts after the trial court reduced the felony charges to misdemeanors pursuant to section 17, subdivision (b), and was placed on probation.

Defendant appeals from the denial of his motion to suppress evidence (§ 1538.5), claiming he was not lawfully placed under a citizen's arrest, and his arrest for a misdemeanor not committed in the presence of the officer was unlawful. We affirm.

## BACKGROUND

On October 6, 2008, Peggy T., a dispatcher for the Palm Springs Police Department, received several 911 calls from a person who identified himself as Craig Bloom or Attorney Craig Bloom. Defendant had called the 911 line on other occasions, such that Ms. T. and her fellow dispatchers recognized his voice. In the calls, defendant used profanity, called the dispatchers obscene names, screamed into the phone, and babbled. It reached the point where Ms. T. recognized his telephone number when it came up and began to reject his calls.

On the evening of October 6, 2008, Ms. T. received approximately 20 to 25 calls from defendant. Other dispatchers also received about 20 calls from defendant. When the dispatchers began hanging up on him, defendant called from different telephone numbers, three in all: his residence, a carwash, and a pay phone across the street, but the dispatchers recognized his voice. The calls were annoying and harassing and prevented the dispatchers from taking other, more legitimate emergency calls. Eventually, Ms. T. dispatched police officers, requesting a citizen's arrest of defendant. Ms. T. executed a citizen's arrest complaint form for this purpose.

Because addresses come up on the 911 screen when a telephone call comes in, Ms. T. dispatched the officers to a location in Riverside County. A Palm Springs police officer received the dispatch and went to the location of defendant's last call after he confirmed that Ms. T. wished to make a citizen's arrest of defendant. At that location, he found defendant talking to other officers. Defendant admitted to the officers that he had made the calls prior to being arrested.

The officer told defendant he was under a citizen's arrest and attempted to take him into custody. However, defendant struggled against all three officers

---

[1] All statutory references are to the Penal Code unless otherwise stated.

and fought to prevent handcuffing. Even after defendant was handcuffed, he continued to struggle and resist, so officers had to put pressure on the handcuffs to force him down to the ground. In the process of attempting to take defendant into custody, one officer sustained a bruise on his bicep, another officer was bitten, and a third officer sustained a cut finger.

Defendant was charged with felony counts of battery on a peace officer (§ 243, subd. (c); count 1), resisting an executive officer (§ 69; count 2), and a misdemeanor violation of making annoying or harassing calls to 911 (§ 653x, subd. (a)). After he was held to answer on the felonies, defendant made motions to set aside the information (§ 995) and to suppress evidence as the product of an unlawful arrest. Both motions were denied. On April 20, 2009, the trial court granted a defense motion to reduce the felony violations to misdemeanors pursuant to section 17, subdivision (b).[2] Immediately thereafter, defendant pled guilty to all three counts, and waived his right to a probation report. Defendant was placed on summary probation, and appealed.

## DISCUSSION

Although he directs most of his arguments against the pleadings filed in the trial court by the People, the crux of defendant's appeal is a challenge to the trial court's denial of his motion to suppress evidence. The ground for this claim is that defendant was unlawfully taken into custody by police officers pursuant to an invalid citizen's arrest. We disagree.

### A. Standard of Review

In reviewing the denial of a motion to suppress evidence pursuant to section 1538.5, we consider the record in the light most favorable to respondents, since all factual conflicts must be resolved in the manner most favorable to the superior court's disposition on the suppression motion. (*People v. Reyes* (2009) 172 Cal.App.4th 671, 683 [91 Cal.Rptr.3d 415].) We then exercise our independent judgment to determine whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878], citing *People v. Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

### B. Discussion

Defendant challenges the lawfulness of his arrest. He contends the police officer who took defendant into physical custody did not have authority to

---

[2] The more appropriate procedure would have been to reduce the felonies to misdemeanors after defendant entered his guilty plea, pursuant to section 17, subdivision (b)(1) or (3).

perform a citizen's arrest for a misdemeanor offense that was not committed in his presence. Specifically, he contends that the citizen making the arrest (the 911 dispatcher) did not sufficiently participate in the arrest to make it a valid citizen's arrest. According to defendant, the dispatcher was required to physically deliver defendant into the custody of the police. We disagree.

■ Any person, though not an officer, may arrest another for committing or attempting to commit a public offense in his presence. (§ 837; *People v. Score* (1941) 48 Cal.App.2d 495, 498 [120 P.2d 62].) The "presence" requirement is found in both sections 836 and 837, and has been liberally construed. (*People v. Sjosten* (1968) 262 Cal.App.2d 539, 543–544 [68 Cal.Rptr. 832].) A warrantless arrest by a citizen for a misdemeanor occurring in the citizen's presence is lawful. (*Johanson v. Department of Motor Vehicles* (1995) 36 Cal.App.4th 1209, 1216 [43 Cal.Rptr.2d 42].)

Under section 836, the term "presence" does not require physical proximity but, rather, the crime must be apparent to the officer's senses; the same interpretation applies to arrests by citizens. (*Ibid.*) The "senses" include the sense of hearing, so a public offense may be committed in an officer's presence when his auditory perception is effected by an electronic device, such as an electronic wire worn by an undercover officer. (See *People v. Burgess* (1959) 170 Cal.App.2d 36, 41 [338 P.2d 524].)

A telephone is an electronic device that aids a person's auditory perception, so a person who makes an annoying or harassing call to a 911 dispatcher has committed the crime in the dispatcher's presence. (See *People v. Bradley* (1957) 152 Cal.App.2d 527, 532–533 [314 P.2d 108] [officer telephoned a bookie and asked the person who answered to place a bet; the bookmaking offense was committed in his presence].) Here, the misdemeanor offense of making annoying and harassing calls to 911 was made in the dispatcher's presence because she was personally engaged in the telephone calls. Because the nature of the crime involved the use of a telephone, the "presence" element does not require the dispatcher to leave her post to confront defendant personally in order to effect a citizen's arrest.

■ The "presence" element relates only to commission of the offense, and not to the proximity of the citizen arrestor at the time of the arrest. There was no need for the dispatcher to go to defendant's location to "participate" in the arrest. The "presence" language in section 837 only requires that the offense be committed in the presence of the citizen arrestor; nothing in the statute requires that the arrest take place in the citizen's presence.

■ However, a citizen's arrest must be made promptly after the offense is committed in the arrestor's presence. An arrest for a misdemeanor without a

warrant cannot be justified if made after the occasion has passed, though committed in the presence of the person making the arrest. (*Hill v. Levy* (1953) 117 Cal.App.2d 667, 670 [256 P.2d 622].) This only means that the arrestor must proceed as soon as possible to make the arrest, and if instead of doing so he goes about other matters unconnected with the arrest, the right to make the arrest ceases. (*Ibid.*; *People v. Hesslink* (1985) 167 Cal.App.3d 781, 788 [213 Cal.Rptr. 465].)

Defendant complains that the arrest was unlawful because the dispatcher resumed her work after making the citizen's arrest. However, the fact she resumed her work after the citizen's arrest is irrelevant. The immediacy required by *Hill v. Levy, supra*, 117 Cal.App.2d at page 670 relates to the gap in time between the offense which took place in the citizen arrestor's presence and the actual citizen's arrest. "Proceeding as soon as possible" to make the arrest means there should not be an "appreciable lapse in time such that the person arrested would not necessarily be familiar with the circumstances justifying the arrest." (*Johanson v. Department of Motor Vehicles, supra*, 36 Cal.App.4th at p. 1218.) In other words, the dispatcher could not return to her duties before contacting police and requesting that defendant be taken into custody.

Here, the dispatcher proceeded as soon as possible to make the arrest by dispatching an officer and promptly executing a citizen's arrest form. The dispatcher proceeded as soon as possible, and the record reveals defendant was still in the location of the most recent calls, showing that no appreciable lapse of time had occurred and that the calls would have persisted absent the arrest.

■ Defendant argues that the dispatcher's participation was too limited, and that she was required to physically deliver defendant to the custody of the police. (§ 847.) This is too narrow a reading of section 847, since a private person making a citizen's arrest is expressly authorized to delegate that responsibility to an officer. (§ 839.) Defendant's interpretation would result in an implied repeal of section 839, an interpretation we cannot adopt. (See *People v. Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294] [repeal by implication is disfavored], citing *In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980].) Further, requiring a private citizen to physically take custody of a defendant and deliver him to the custody of police would be dangerous given defendant's mental state, and impractical given the dispatcher's official duties. ■ We interpret sections 847 and 839 to mean that the citizen's duty to "deliver him or her to a peace officer" may be delegated by executing the citizen's arrest forms and requesting that a peace officer take the suspect into custody.

■ Defendant acknowledges legal authority that permits a citizen to delegate his or her authority to make a citizen's arrest to another person. (§ 839; *People v. Sjosten, supra,* 262 Cal.App.2d at p. 544.) Section 839 expressly authorizes a citizen to "orally summon as many persons as he deems necessary to aid him" in making a citizen's arrest. (See *People v. Campbell* (1972) 27 Cal.App.3d 849, 853–854 [104 Cal.Rptr. 118].) The authority to delegate the physical act of taking the offender into custody has been interpreted to mean the citizen is not required to engage in immediate pursuit of a suspect to inform the defendant he is under arrest. (*Id.* at p. 854.)

■ Delegating the task by summoning a police officer to assist in making the arrest is most prudent for a private citizen, to avoid the danger of a confrontation with the suspect. (*People v. Sjosten, supra,* 262 Cal.App.2d at p. 544, referring to *People v. Score, supra,* 48 Cal.App.2d 495, where a defendant resisted a citizen's arrest of him resulting in injury to the person making the citizen's arrest.) Thus, the dispatcher lawfully arrested defendant for making the calls and she was not required to physically restrain him or to be present at the time of the arrest.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and McKinster, J., concurred.