Filed 8/24/20  P. v. Johnson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH JOHNSON,<br><br>    Defendant and Appellant. | G056278<br><br>(Super. Ct. No. 17ZF0001)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed in part, and remanded with directions.

Sheila Quinlan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent

\*            \*            \*

A jury found appellant Kenneth Johnson guilty of conspiracy to sell methamphetamine (Pen. Code, §§ 182, subd. (a), 11379; all further statutory citations are to the Penal Code, unless otherwise stated), conspiracy to sell heroin (§§ 182, subd. (a), 11352), and conspiracy to commit extortion (§§ 182, subd. (a), 518), and it found true related gang allegations. In a bifurcated proceeding, the trial court found true three of five prior strike conviction allegations, and two of four prior serious felony conviction allegations. The trial court sentenced Johnson to a total term of 35 years to life, consisting of a third-strike term of 25 years to life for conspiracy to sell methamphetamine, and concurrent terms of 25 years to life on the other two conspiracy counts. The court also imposed two five-year terms for the prior serious felony convictions.

Johnson contends the evidence was insufficient to support his conviction for conspiracy to commit extortion. We conclude the evidence showed Johnson and two other persons agreed to collect a $2,500 "fine" imposed on the victim D.R. through the wrongful use of force and therefore substantial evidence supports the conviction for conspiracy to commit extortion.

In a related argument, Johnson contends his trial counsel was ineffective for failing to object to admission of evidence concerning D.R.'s death because the death of an unrelated victim was irrelevant and unduly prejudicial. In light of our conclusion D.R. was the target of the conspiracy to commit extortion, the evidence of D.R.'s death was highly relevant. Johnson therefore has not shown trial counsel was ineffective.

Johnson further contends the trial court violated state law and his Fourth Amendment right to due process by admitting expert testimony of case-specific facts that were beyond the expert's personal knowledge and expertise in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). Because Johnson failed to object to the expert testimony on hearsay, due process or *Sanchez* grounds at trial, he forfeited this claim of

error. Even if not forfeited, his claim is unavailing because the expert did not relay any case-specific hearsay.

Finally, Johnson contends the matter should be remanded to the trial court to exercise its newly granted discretion under Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393) whether to strike one or both of the two prior serious felony enhancements. We agree. Accordingly, we affirm Johnson's convictions and remand the matter for the trial court to consider whether to impose any of the prior serious felony enhancements.[1]

I

FACTUAL BACKGROUND

The Aryan Brotherhood ("A.B.") is the dominant white racist gang in the California prison system. Although known as the Aryan Brotherhood, the gang also is referred to by slang names such as "Alice Baker." A fully made or fully-fledged member of the A.B. is called a "Brother." The primary activities of the A.B. are aggravated assault, murder, narcotics dealing and extortion. Johnson is a member of the A.B., and in July 2016, he was serving a state prison sentence.

Public Enemy Number 1 ("Pen1") is A.B.'s primary associate gang. A Pen1 member cannot refuse an order by an A.B. member. In July 2016, William Shoop and Matthew Hall were Pen1 gang members, with the monikers "Buss" and "Cyco," respectively. Both men were not in custody. Hall bragged to a person named "Ronnie" that Hall was a fully made member of the A.B. and that he committed crimes for the gang in Orange County. He stated: "I'm that Alice Baker. I'm that 260 pounds of your worst nightmare. I'm that go down to Orange County and make three motherfuckers find their

---

[1] We deny Johnson's application to review confidential material filed on January 22, 2019. The confidential material is not relevant to the issues on appeal.

3

rocks or pay the consequences. I'm that Brother of Ronnie and Brother Billy. I'm that get shit done without waiting."

In July 2016, Johnson imposed a $2,500 fine on an unnamed individual. On July 5, 2016, Johnson texted Shoop's phone number to Hall. The next day, Johnson sent a text message to Shoop, which stated: "Just so you are crystal clear on this and not fuck yours off, [ ]that 2500 fine that was imposed on that dude, [ ] is AB business and not you or any other person can undo it or anything else. [ ] Cyco will take charges of how to handle it and none else. [ ] got it?" Shoop replied, "Got it" and "Thank you."

On July 7, 2016, Hall texted Shoop, telling him to "retrieve that phone from that f****** n***** to anything else you may have reacquired since our last visit and then bust him in the mouth if you feel like it." On July 10, Shoop texted Hall, stating: 'I[']ll be calling you in a couple of hours with all you asked." Minutes after sending the text, Shoop texted the victim D.R., stating, "Don't forget to bring that phone up[.]"

On July 13, 2016, at an Anaheim motel, Shoop accidentally shot D.R. in the left shoulder, killing him. Christine Maier, Shoop's mistress and D.R.'s friend, testified the two men initially had an antagonistic relationship, but their relationship "was gradually getting better and better." Maier also testified that she and D.R. sold heroin out of a Costa Mesa residence. She admitted she helped Shoop download D.R.'s drug contacts off D.R.'s phone.

Several of D.R.'s friends testified he was stressed the week before his death. One testified that during this time period D.R. shortchanged him on several drug sales. Another friend testified D.R. stated he was "in a lot of trouble," and needed to "make some more money before he can even make homeboy's money back."

4

II

DISCUSSION

A. *Substantial Evidence Supports the Conviction for Conspiracy to Commit Extortion*

Johnson concedes the evidence showed he had the authority to, and did in fact, impose a $2,500 fine. He also concedes that around the same time, the victim was stressed and appeared to need money. However, Johnson argues there was insufficient evidence to show he imposed the $2,500 fine on the victim, as opposed to some unknown individual.

"A conspiracy is an agreement by two or more persons to commit any crime." (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024; see § 182, subd. (a)(1).) "'A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.' [Citations.]" (*People v. Johnson* (2013) 57 Cal.4th 250, 257.) The elements of the offense of extortion are: "(1) A wrongful use of force or fear, (2) with the specific intent of inducing the victim to consent to the defendant's obtaining his or her property, (3) which does in fact induce such consent and results in the defendant's obtaining property from the victim." (*People v. Hesslink* (1985) 167 Cal.App.3d 781, 789.) "'Evidence is sufficient to prove a conspiracy to commit a crime "if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy."' [Citations.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 515-516.)

Here, the text messages show there was an agreement among Johnson, Shoop and Hall to use force or fear to collect the $2,500 A.B. fine from an individual. Johnson gave Hall Shoop's phone number, and he told Shoop that Hall would be in

5

charge of the collection of the fine. Hall bragged that he was "260 pounds of your worst nightmare" and that he would "make . . . motherfuckers find their rocks or pay the consequences." Hall also specifically told Shoop that Shoop could "bust [the extortion victim] in the mouth if you feel like it."

Contrary to Johnson's contention, the evidence also was sufficient to show the extortion victim was D.R. In his text message, Johnson warned Shoop that Shoop could not "undo" the fine. From this text message, the jury could infer that Shoop was friendly with the extortion victim and wanted to lift the A.B. fine. Maier testified Shoop initially had an antagonistic relationship with D.R., but the relationship gradually became amicable.

Minutes after Hall texted Shoop to "retrieve" the extortion victim's phone, Shoop texted D.R. and reminded him not to forget his phone. The proximity of the text messages indicates D.R. was the extortion victim.

The week before his death, D.R was stressed for money to pay a "homeboy's money." A jury reasonably could infer D.R. was trying to pay the A.B. fine.

Finally, D.R. was found dead in an Anaheim motel weeks after the A.B. fine was imposed, and Shoop was the shooter. The jury could conclude, as the prosecutor argued, that the shooting occurred during D.R.'s attempted armed robbery of another drug dealer to raise money to pay the fine. Even if the jury found no armed robbery occurred, it could conclude Shoop tried to collect money from D.R. by brandishing his firearm and accidentally shot D.R. In sum, there was substantial evidence to support Johnson's conviction for conspiracy to commit extortion against D.R.

B. *Johnson Has Not Shown His Trial Counsel Was Ineffective*

Johnson contends his trial court was ineffective for failing to object under Evidence Code section 352 to evidence of D.R.'s death, arguing D.R.'s death was "irrelevant" because D.R. was not the extortion victim.

6

Because we have concluded D.R. was the extortion victim, the facts and circumstances of his death were highly relevant. Of course, trial courts may exclude relevant evidence if its unduly prejudicial nature outweighs any probative value. Here, the description of the shooting and death was not inflammatory, consumed a brief amount of trial time, and was not likely to confuse the jury. In sum, the probative value of the evidence of D.R.'s was not substantially outweighed by any undue prejudice. Johnson therefore has not shown his trial counsel was ineffective for failing to object to evidence of D.R.'s death.

C. Sanchez *Error*

1. Relevant Background

In his opening statement, the prosecutor sought to play a video, found on Hall's cell phone, describing how Hall finds and intimidates people to pay him. The prosecutor explained he believed under *Sanchez*, he needed to introduce the evidence to support his gang expert's case-specific opinion that Hall was an Aryan brotherhood tax collector. Defense counsel objected on Evidence section 352 grounds, arguing the inflammatory nature of the video substantially outweighed by its probative value. The trial court precluded the prosecutor from playing the video during opening statements, but allowed the prosecutor to describe in "general terms" that Hall was a tax collector. It stated the prosecutor could say, "We have got some things off his phone that indicate that he is a tax collector." It deferred ruling on the admissibility of the video during the prosecution's case-in-chief.

During trial, the parties revisited the issue. The prosecutor sought to introduce the video, and Johnson objected under Evidence Code section 352. The court prohibited the prosecutor from playing the playing of the video, but ruled that the "actual content … can be introduced" and the gang expert could base his opinion on the video.

The prosecutor then elicited the following testimony from the gang expert:

"Q. Did you watch that video?

7

"A.  Yes, I did.

"Q.  In very summary terms, did it describe some of Mr. Hall's methods for collection and enforcement?

"A.  Yes, it did.

"Q.  Based on your viewing of that video as well as your reading of the [chat] message we just talked about, in your opinion is Matt Hall a tax collector?

"A.  Yes.

"Q.  What's that, generally speaking?

"A.  Tax collector would be an enforcer for the Aryan Brotherhood prison gang that would collect fines under threat of violence."

2.  Analysis

Johnson contends the trial court violated state law and his federal due process rights by admitting expert testimony of case-specific facts that were beyond the expert's personal knowledge in violation of *Sanchez*, *supra*, 63 Cal.4th 665.  Specifically, Johnson contends the trial court erred in admitting expert testimony on the Hall video.  However, Johnson never raised hearsay or due process objections to the expert's testimony at trial.  Nor did Johnson argue that admission of the expert testimony violated *Sanchez*.  As a result, Johnson forfeited his claim of error.  (*People v. Stevens* (2015) 62 Cal.4th 325, 333 ["the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted"]; see also *People v. Perez* (2020) 9 Cal.5th 1, 14 ["an objection under Evidence Code section 352 is completely different from a *Sanchez* objection"].)

Even if not forfeited, Johnson's claim is unavailing.  The expert did not relay any statements made by Hall, but instead summarized the general subject matter of Hall's statements.  Thus, the expert did not relay any case-specific hearsay.  There was no *Sanchez* error.  (See *Sanchez*, *supra*, 63 Cal.4th at p. 685 ["Any expert may still *rely* on hearsay in forming an opinion, and may tell the jury in *general terms* that he did so."].)

8

D. *Resencing under Senate Bill No. 1393*

Section 667, subdivision (a), requires a trial court to impose a five-year consecutive term for "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony," and section 1385, subdivision (b), previously prohibited a trial court from striking that punishment. On September 30, 2018, the Governor signed Senate Bill No. 1393 which, effective January 1, 2019, amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a court to exercise its discretion to strike or dismiss for sentencing purposes a prior serious felony conviction. (Stats. 2018, ch. 1013, §§ 1-2.)

The Attorney General concedes Senate Bill No. 1393 applies to Johnson, but contends remand would be a futile act, noting the trial court denied Johnson's motion to strike his prior strike convictions. However, whether to strike a prior strike allegation and whether to strike a five-year enhancement would result in different sentences. While we recognize the trial court's ruling and statements at sentencing suggest it might not exercise its discretion to strike defendant's prior serious felony enhancements, this does not foreclose the possibility the trial court would have stricken the enhancements if it had the discretion to do so. (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110-1111.) Accordingly, remand is appropriate to allow the trial court to exercise its discretion to determine whether to strike one, both or none of Johnson's prior serious felony enhancements under Senate Bill No. 1393.

## III

### DISPOSITION

The convictions are affirmed.  The matter is remanded for the trial court to consider whether to strike the two prior felony enhancements.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.